**UNITED STATES of America,
Appellant,**

v.

**Richard Lee BAST and Redex
Corporation.**

No. 72–2132.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 6, 1973.

Decided Jan. 25, 1974.

Rehearing Denied Feb. 22, 1974.

James R. Robinson, Lansing, Mich., of the bar of the Supreme Court of Michigan, pro hac vice, by special leave of Court, with whom Harold H. Titus, Jr., U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellant.

Gregory C. Brady, John E. Drury, III, and Guy H. Cunningham, III, Asst. U. S. Attys., also entered appearances for appellant.

Philip J. Hirschkop, Alexandria, Va., for appellees.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

Defendants Bast and Redex Corporation were indicted for, *inter alia,* possessing, distributing and advertising devices for the interception of wire and oral communications, in violation of a provision of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2512 (1970). Electronic recording and listening devices, as well as advertising and records of distribution and sale, were seized at the corporate offices of the defendant Redex Corporation pursuant to a search warrant, issued on an affidavit alleging violations of § 2512. The defendants filed a pre-trial motion to suppress the evidence seized under the warrant. The District Court granted the motion on the ground that the allegations of the affidavit were insufficient as a matter of law to establish a violation of § 2512. The Government took an appeal [1] which presents the issue whether the facts alleged in the affidavit suffice to show probable cause to believe that defendants had violated § 2512. We vacate and remand.

## I. STATEMENT OF FACTS

Defendant Redex Corporation, owned principally by defendant Bast, is a distributor of electronic recording and listening equipment. The affidavit in support of a search warrant for the premises of Redex alleged that one Fitzgerald had obtained from Redex a brochure advertising for sale a miniature tape recorder. According to the brochure, the recorder "secretly tapes a conversation, interview, conference or lec-

[1]. 18 U.S.C. § 3731 (1970).

ture IN YOUR SHIRT POCKET." Another section of the brochure stated:

## EXTREMELY SENSITIVE PICK UP—TO 75 FEET

Whether it's a face-to-face conversation, an around-the-table conference with a sizeable group, or a lecture in a large hall or a secret intelligence investigation—BINAURAL compensates automatically for each situation . . . You are free to concentrate on the proceedings while everything spoken is taped.

In addition to the information contained in the brochure, the affidavit contained allegations of information supplied by informants as to electronic devices sold, purchased, or possessed by Redex Corporation and Bast. The warrant which issued authorized search of the premises of Redex Corporation and seizure of "advertisement of items to be used primarily as surreptitious listening devices and listening devices of a surreptitious nature, records of sale, manufacture, distribution, possession thereof which are in violation of 18 U.S. C. § 2512."[2] Seizure was apparently predicated on 18 U.S.C. § 2513.

**2.** The relevant statutory provisions are 18 U.S.C. §§ 2511, 2512, and 2513, which provide in pertinent part as follows:

§ 2511. Interception and disclosure of wire or oral communications prohibited

(1) Except as otherwise specifically provided in this chapter any person who—

(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;

\* \* \* \* \*

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

\* \* \* \* \*

(2)(d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act.

§ 2512. Manufacture, distribution, possession, and advertising of wire or oral communication intercepting devices prohibited

(1) Except as otherwise specifically provided in this chapter, any person who willfully—

(a) sends through the mail, or sends or carries in interstate or foreign commerce, any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications;

(b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce; or

(c) places in any newspaper, magazine, handbill, or other publication any advertisement of—

(i) any electronic, mechanical, or other device knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications; or

(ii) any other electronic, mechanical, or other device, where such advertisement promotes the use of such device for the purpose of the surreptitious interception of wire or oral communications,

knowing or having reason to know that such advertisement will be sent through the mail or transported in interstate or foreign commerce,

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

(2) It shall not be unlawful under this section for—

(a) a communications common carrier or an officer, agent, or employee of, or a person under contract with, a communications common carrier, in the normal course of the communications common carrier's business, or

(b) an officer, agent, or employee of, or a person under contract with, the United States, a State, or a political subdivision thereof, in the normal course of the activities of the United States, a State, or a political subdivision thereof, to send through the mail, send or carry in inter-

Execution of the warrant resulted in the seizure of electronic devices and business records from the offices of Redex Corporation. The defendants' pre-trial motion to suppress these items as evidence was based on the ground, *inter alia,* that the averments of the affidavit did not establish a violation of § 2512.

The District Court ruled that all information in the affidavit except that relating to the brochure would not support a finding of probable cause, the information being either not indicative of guilt or too remote in time from the application for the warrant. United States v. Bast, 348 F.Supp. 1202, 1203 (D.D.C.1972). Thus, as the District Court viewed it, a finding of probable cause had to rest on the brochure alone. The court concluded that the brochure did not establish a violation of § 2512 and accordingly probable cause for the search was lacking.

## II. DISTRICT COURT'S CONSTRUCTION OF § 2512

Section 2512(1)(c)(ii) makes it a crime willfully .to

[place] in any newspaper, magazine, handbill, or other publication any advertisement of any . . . electronic, mechanical, or other device, where such advertisement promotes the use of such device for the purpose of the surreptitious interception of wire or oral communications. . . .

The District Court's ruling turns on its construction of the phrase "surreptitious interception."

The Government urged that the phrase includes any secret recording of communications, and that a *prima facie* violation of this provision is established by

state or foreign commerce, or manufacture, assemble, possess, or sell any electronic, mechanical, or other device knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications.

§ 2513. Confiscation of wire or oral communication intercepting devices

the phrases in Redex's brochure which adverted to clandestine use of the recorder—*"secretly* tapes . . . in your shirt pocket" (emphasis added).

The District Court, however, construed the term more narrowly. It noted that § 2511 modifies the general prohibition on willful interception of wire and oral communications with exceptions, particularly the "consent" exception, § 2511(2)(d), providing that

It shall not be unlawful under this chapter for a person . . . to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act.

The District Court held that the advertising prohibition of § 2512 should not be read to prohibit the promotion of uses apparently lawful in light of the "consent exception" of § 2511(2)(d). In effect, the District Court construed the phrase "surreptitious interception" of § 2512 to mean "an interception prohibited by § 2511." Applying its construction of the statute, the District Court found that the brochure prepared by Redex Corporation did not promote use of the recorder for the purpose of surreptitious interception:

The recorder in this case is advertised as one designed to be used primarily by a party to the taped conversation

Any electronic, mechanical, or other device used, sent, carried, manufactured, assembled, possessed, sold, or advertised in violation of section 2511 or section 2512 of this chapter may be seized and forfeited to the United States.

\* \* \* \* \*

and therefore falls outside the designation "surreptitious.".

348 F.Supp. at 1204.

## III. DISPOSITION

### A. *Issue of Probable Cause*

Even on the narrow construction of the statute which the trial court adopted, it was erroneous to conclude that the brochure did not establish probable cause. We revert to the portion of the brochure that is captioned: "EXTREMELY SENSITIVE PICK UP—TO 75 FEET." Here the brochure's text states that a product with such sensitive pick-up is useful, not only for recording of face-to-face conversation, an around-the-table conference, or a lecture in a large hall, but also for a "secret intelligence investigation."

■ While the tendency and character of the brochure involve factual matters that would ultimately have to be determined at trial, the brochure provided "probable cause" to believe that sending it was a violation of the statute. There was at least a reasonable possibility that a trier of fact would conclude that defendant had willfully placed this advertisement in order to promote use of the recorder to tape conversations under circumstances in which the recorder is concealed and the participants are unaware of the interception—a use not permitted by the consent exception of § 2511. Therefore there was "probable cause" to believe the brochure "promotes the use of such [electronic] device for the purpose of the surreptitious interception," in violation of the advertising prohibition of § 2512, even on the trial court's construction of the prohibition as limited to promotion of nonconsensual interception.

■ It may be that this phrase in the brochure is susceptible of a convincing alternative interpretation which would not violate the advertisement proscription,[3] but that is a matter for trial. All we say here is that the magistrate could reasonably have issued the warrant even assuming, for the time being, the correctness of the interpretation adopted by the District Court. The affiant seeking a warrant and the issuing magistrate have some latitude in their interpretation of evidence before them, and evidence may support a warrant even though later held insufficient to support conviction.[4]

### B. *Construction of Section 2512*

Even assuming the accuracy of the District Court's construction of the statute, it erred. We think it is not in the interest of sound judicial administration to limit our reversal to identification of that error, however, for we also believe that its construction is too narrow. We say this even though we must say at the same time that we do not think it appropriate to define the precise contours of the prohibition of § 2512 in the absence of a more complete record.

1. The District Court's reading of the § 2511 exceptions into the prohibition of § 2512 lacks support in the language of the statute.

The prohibition of § 2512(1)(b) applies to anyone who willfully manufactures, possesses, or distributes a "device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications. . . ." Section 2512(1)(c)(i) prohibits the willful advertisement of the kind of device identified by § 2512(1)(b). The prohibition

---

3. Counsel has argued that "secret intelligence investigation" refers merely to the subject of the conversations taped in one of the situations described by the preceding words in the same section of the brochure—a "face-to-face conversation," "around-the-table conference," or a lecture. We hold only that there is "probable cause" to believe that the advertiser was promoting use

of the device for recording of a conversation in circumstances where the participants are unaware of its use.

4. See Brinegar v. United States, 338 U.S. 160, 172–173, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Von Sleichter v. United States, 153 U.S.App.D.C. 169, 174, 472 F.2d 1244, 1249 (1972).

of § 2512(1)(c)(ii), however, goes further and applies to anyone who willfully places an advertisement of *any* device, not merely the devices condemned in (b) on the basis of their primary usefulness, "where such advertisement promotes the use of such device for the purpose of the surreptitious interception of wire or oral communications."

 The words "surreptitious interception" connotes, in plain and ordinary usage, "secret listening."[5] The mere fact that a device may be used for interceptions that do not violate § 2511 does not mean that its manufacture and advertising are compatible with § 2512. Section 2512(1)(b) prohibits the manufacture, sale and possession of devices *primarily* useful for the purpose of secret interception, even though the devices may be used for other and lawful interceptions. The intent of Congress is discernible and sensible, and there is no reason to consider the doctrines that indicate that when plain meaning leads to an absurd result it does not signify applicable legislative intent. Similarly, there is no anomaly in Congress's apparent attempt, in the advertising prohibition of § 2512(1)(c)(ii), to reach promotion of a device for secret interception, even though the manufacture or possession of the device is not banned by § 2512(1)(b) as one "primarily" useful for secret interception. It may be unusual but it is not unprecedented for Congress to prohibit the advertising of a product even though it has not prohibited the product or its use *per se*. An example that looms large currently is the prohibition of advertising of cigarettes on radio or television.[6]

 The legislative history supports the interpretation of § 2512 without limitation by the exceptions contained in § 2511. The Senate Report on the bill that originated the language that emerged in § 2512 clearly makes the point that under this language the manufacture of a device may be illegal, because it is primarily useful for surreptitious interception, even though the device "may have innocent uses." It is instructive to quote an excerpt:

> The provisions of section 2512 banning the manufacture, distribution, sale, possession, and advertising of wiretapping and eavesdropping devices will significantly curtail the supply of a variety of devices. There is no intent to preempt State law. The prohibitions are applicable to devices whose design renders them primarily useful for the surreptitious interception of private wire or oral communications. The statutory phrase is intended to establish a relatively narrow category of devices whose principal use is likely to be for wiretapping or eavesdropping. A device will not escape the prohibition merely because it may have innocent uses. The crucial test is whether the design of the device renders it *primarily* useful for *surreptitious* listening. Obviously, the sort of judgment called for here in close cases would warrant the use of expert testimony.

See United States v. One Device, 160 F. 194 (10th 1947). The prohibition will thus be applicable to, among others, such objectionable devices as the martini olive transmitter, the spike mike, the infinity transmitter, and the microphone disguised as a wristwatch, picture frame, cuff link, tie clip, fountain pen, stapler, or cigarette pack. Such devices are widely advertised and distributed at the present time and are readily available on the market. By banning these devices, a significant source of equipment highly useful for illegal electronic surveillance will be eliminated.

S.Rep.No.90–1097, 90th Cong., 2d Sess. 95 U.S.Code Cong. & Admin.News, 1968, pp. 2112, 2183 (1968). Thus the manufacture, sale and possession prohibition

---

5. Webster's Third International Dictionary gives the following synonyms for "surreptitious": secret, stealthy, clandestine.

6. 15 U.S.C. § 1335 (1970).

was intended to ban particular devices, among them eavesdropping equipment which could be worn on the person by a party to a conversation, and hence used in a manner which would not violate § 2511 because of its "consent exception."

2. Thus far, we have focused on rejecting the District Court's approach to the interpretation of § 2512. The next task is to consider what devices are within the prohibition of § 2512(1)(b) (manufacture and possession) and § 2512(1)(c)(1) (advertising), because the design of the device "renders it primarily useful" for the purpose of surreptitious interception of wire or oral communications, and what kind of advertising is prohibited by § 2512(1)(c)(2) because it "promotes the use" of the device for surreptitious interception, even though possession or manufacture of the device advertised is not unlawful because the device advertised is not "primarily useful" for surreptitious interception.

■■ We do not think it is appropriate to attempt to define the contours of this statute except in the context of a trial, which may encompass executive interpretation, advice and warnings to industry, industry patterns in the manufacture and advertising of devices, and the defendant's particular awareness and intent. Similarly, we think it appropriate to defer definitive consideration of a claim that a construction of the advertising prohibition of § 2512(1)(c)(2) to reach the promotion of any device for use in any secret interception violates the Fifth Amendment in the failure to give fair notice of forbidden conduct. A court may construe a statute narrowly to avoid a serious doubt of its constitutionality. Richmond Co. v. United States, 275 U.S. 331, 346, 48 S.Ct. 194, 72 L.Ed. 303 (1928). Any claim that fair notice is lacking is, however, appropriately reached on a more complete record, after the Government has had an opportunity to establish scienter, for the scienter requirement needed for willful conduct may rescue a statute from the infirmity of vagueness. *See, e. g.,* Screws v. United States, 325 U.S. 91, 101–105, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

3. This is a new statute and it will doubtless pose a number of questions of interpretation. Questions may arise as to the implications of the exception in § 2512(2) for employees or agents of, or persons under contract with, Government agencies and communications common carriers.[7] Questions may also arise as to the scope of the phrase in § 2512(1) (c) interdicting the placing of prohibited advertisements "in any newspaper, magazine, handbill, or other publication." Whether this covers a brochure mailed out on request is a question that was not briefed or argued and that we do not purport to decide in this opinion. All such questions are best decided in the context of a trial, for the reasons

---

7. Section 2512(2) provides that it shall not be unlawful for the following persons to possess, manufacture, sell, transport, or send through the mail a device "primarily useful for the purpose of surreptitious interception" :

 (a) a communications common carrier or an officer, agent, or employee of, or a person under contract with, a communications common carrier, in the normal course of the communications common carrier's business, or

 (b) an officer, agent, or employee of, or a person under contract with, the United States, a State, or a political subdivision thereof, in the normal course of the activities of the United States, a State, or a political subdivision thereof. . . .

If the exception of § 2512(2) is read broadly, as intending to permit exempt persons to be supplied with interceptive devices prohibited as to other persons, it may possibly imply exemption not only for one under contract with a communications carrier or government agency, but also for one who conducts limited advertising or solicitation reasonably intended and designed so as to reach only persons whose use of interceptive devices is exempt under § 2512(2). The possibility of such an implied exemption was not raised by the parties, and we cannot ascertain from the record before us whether it could have meaning for the case at hand. We advert to the matter as a further illustration of the range of questions which must be left open at this juncture.

stated in section IIIB2 of this opinion. We move one step at a time.

\* \* \* \* \* \*

The order of the district court is vacated and the case remanded for proceedings not inconsistent with this opinion.

So ordered.