669 A.2d 917

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Edwin LABRON, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1995.

Decided Dec. 29, 1995.

88

John W. Packel, Stuart Lev, Philadelphia, for E. Labron.

Catherine Marshall, Ronald Eisenberg, Joan Weiner, Philadelphia, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

### *OPINION*

MONTEMURO, Justice.

Appellant, Edwin Labron, appeals from a memorandum opinion and per curiam order of the Superior Court reversing an order of the Court of Common Pleas of Philadelphia County suppressing evidence seized during a warrantless search of an automobile.

We granted permission for this appeal in order to determine whether the Commonwealth must establish the existence of exigent circumstances in order to justify the warrantless search of an automobile, or if the "automobile exception" to the warrant requirement requires only that the Commonwealth establish the existence of probable cause. Because we believe that the automobile exception requires a showing of both probable cause and exigent circumstances, we hold that the Superior Court incorrectly applied the automobile exception to this case.

On August 24, 1990, Officer Gerald Nimmo of the Philadelphia Police Department, assigned to the narcotics unit, established surveillance of the 900 block of Auburn Street in the

City of Philadelphia from a confidential location. During his surveillance, he observed Appellant and another male, Santiago, conduct transactions in which Appellant and Santiago would accept cash from individuals on the street in exchange for small plastic bags filled with white powder. Based upon his experience as a police officer, he believed that the packets were filled with cocaine and that the exchanges constituted the sale of illegal drugs. A short while later, Officer Nimmo observed a third male, Melendez, approach Appellant and Santiago. The three men proceeded to a blue Lincoln automobile which was parked on the south side of Auburn Street.

With a key, Melendez opened the trunk of the car, reached inside, and retrieved a bag. From the bag, Melendez produced two other bags, giving one each to Appellant and Santiago. The bags contained smaller packets filled with white powder. In exchange for the bags, Appellant and Santiago gave Melendez currency. Melendez closed the trunk while Appellant and Santiago returned to the street to continue what Officer Nimmo believed to be drug transactions.

A short time later, the three men again met and again approached the blue Lincoln, where Melendez repeated the exchange of bags containing smaller packets filled with white powder for cash from Appellant and Santiago. A few minutes afterward, Melendez approached Santiago and handed him a set of keys. Thereafter, Melendez got into another car, a blue Ford stationwagon, and drove away. Appellant and Santiago continued to transact sales.

Approximately ten minutes after Melendez had left, a blue Toyota pulled into the 900 block of Auburn Street. Two men exited the vehicle and approached Santiago. Appellant approached the group and Santiago gave him a set of keys. Appellant went to the blue Lincoln and used the keys to open its trunk. One of the men from the Toyota retrieved a plastic bag from the passenger side of the Toyota and gave it to Appellant, who was waiting at the blue Lincoln. Appellant took the bag and placed it in the trunk, which he then closed, returning the keys to Santiago.

The two men from the Toyota got into their automobile and drove away. Back-up officers who were waiting a few blocks away stopped the blue Toyota and arrested its two occupants. Other back-up officers quickly arrived on Auburn Street and arrested Appellant and Santiago. At that point, Officer Nimmo directed another officer to open the trunk of the blue Lincoln. Upon doing so, the officers found two plastic bags and a plastic sandwich bag, all filled with what proved to be cocaine.

Appellant, charged with delivery of a controlled substance [1] and criminal conspiracy,[2] filed a motion seeking to suppress the evidence obtained from the warrantless search of the automobile. After a hearing, the trial court granted Appellant's motion, holding that although Officer Nimmo had probable cause, the Commonwealth had failed to establish the existence of exigent circumstances in order to justify the warrantless search.

The Commonwealth appealed the suppression order to the Superior Court which, concluding that the trial court had incorrectly analyzed the automobile exception to the warrant requirement, reversed the suppression order. The Superior Court determined that the law does not require the existence of both probable cause and separate exigent circumstances as prerequisites to a valid warrantless search of an automobile. Rather, the court found that "[t]he automobile exception to the warrant requirement demands only that an officer have probable cause to believe that evidence of a crime or contraband will be found within the vehicle...." *Commonwealth v. Labron*, No. 01276 Philadelphia 1992, slip op. at 7–8, 428 Pa.Super. 616, 626 A.2d 646 (Pa.Super., January 6, 1993) (footnote omitted). The court further held that the inherent mobility of an automobile, without more, is sufficient to justify a warrantless search once probable cause to search the vehicle has been established. *Id.* at 9.

1. 35 P.S. § 780–113(30).
2. 18 Pa.C.S. § 903.

In this appeal, Appellant argues that the Superior Court erred in concluding that once probable cause exists to conduct a search, the automobile exception is a per se exception to the warrant requirement. Appellant additionally argues that the trial court correctly determined that because the police had adequate information and time within which to secure a warrant, no exigent circumstances existed to justify the warrantless search of the vehicle.

■ As a preliminary matter, even though recognizing that the Commonwealth concedes that Appellant has standing to contest the search in question, the dissent contends that Appellant does not have "such standing as to have a right to be before this or any Court to seek suppression of the evidence in issue." Dissent at 104. The dissent further notes that even if Appellant does have standing, he nevertheless does not have a reasonable expectation of privacy sufficient to warrant suppression of the evidence. It is clear, however, that issues not raised in the lower courts, or raised at the trial level but not preserved on appeal, will not be considered by an appellate court. *Commonwealth v. McKenna*, 476 Pa. 428, 383 A.2d 174 (1978); Pa.R.A.P. 302(a).

Addressing a similar argument that a petitioner lacked an expectation of privacy sufficient to prevail on a fourth amendment claim, the United States Supreme Court, noting that the argument had not been raised in the courts below, concluded that the government had lost its right to challenge petitioner's legitimate expectation of privacy. *Steagald v. United States*, 451 U.S. 204, 211, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981). *See also Commonwealth v. Govens*, 429 Pa.Super. 464, 632 A.2d 1316 (1993), *alloc. denied*, 539 Pa. 675, 652 A.2d 1321 (1994) (wherein the Superior Court, en banc, recognized that when standing to contest police conduct is not raised at the suppression hearing, a belated attempt to raise the issue on appeal must be rejected.)

■ In this case, during the pre-trial motions, the Commonwealth argued that even though the two men from the Toyota had standing, they did not have a sufficient expectation of

privacy to contest the search. At that point, the Commonwealth noted that although its argument was directed at the suppression motions filed by the men in the Toyota, it also included Appellant. Specifically, the Commonwealth stated that "whether [Appellant] has a reasonable expectation of privacy based on [the fact that he used a key to open the trunk], we would dispute that." (N.T. III at 5).

Nevertheless, after the grant of suppression on Appellant's motion and after having been ordered to file a full and complete statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), the Commonwealth submitted the following issue:

> Did the lower court err in granting defendant's motion to suppress based on a determination that police officers cannot search a vehicle without first obtaining a search warrant, even though probable cause exists to believe the vehicle contains contraband?

Consequently, the Commonwealth abandoned its claim that Appellant lacked a reasonable expectation of privacy sufficient to challenge the police conduct.

> Where a defendant is ordered to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b), and fails to raise a particular matter within that statement, the defendant is deemed to have waived that point of error on appeal. *Commonwealth v. Warren*, 332 Pa.Super. 410, 481 A.2d 681 (1984); Pa.R.A.P. 1925(b).

*Commonwealth v. Phillips*, 411 Pa.Super. 329, 342, 601 A.2d 816, 822 (1992), *aff'd*, 534 Pa. 423, 633 A.2d 604 (1993). Moreover, as the Commonwealth specifically failed to raise this issue, it was not addressed by either the Court of Common Pleas or the Superior Court and thus, effective appellate review is precluded. *See Commonwealth v. Montgomery*, 513 Pa. 138, 518 A.2d 1197 (1986), *cert. denied*, 480 U.S. 935, 107 S.Ct. 1579, 94 L.Ed.2d 769 (1987) (this Court refused to address an exclusionary rule issue which the Commonwealth failed to adequately preserve). Therefore, the standing and

expectation of privacy issues were waived, and as such, they do not merit review.

It is well established that when a motion to suppress has been filed, the Commonwealth bears the burden to establish by a preponderance of the evidence that the evidence is admissible.[3] *Commonwealth v. Johnsonna*, 420 Pa.Super. 434, 438, 616 A.2d 1376, 1378 (1992), *alloc. denied*, 533 Pa. 657, 625 A.2d 1191. Furthermore, while reviewing the ruling of a suppression court, our role is limited to determining whether the factual findings are supported by the record, *Commonwealth v. DeWitt*, 530 Pa. 299, 301, 608 A.2d 1030, 1031 (1992), and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Morris*, 537 Pa. 417, 420, 644 A.2d 721, 723 (1994) (citing *Commonwealth v. Cortez*, 507 Pa. 529, 532, 491 A.2d 111, 112, *cert. denied*, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985)).

This Court has consistently recognized the well established principle that the Fourth Amendment to the United States Constitution[4] and Article 1, § 8 of the Pennsylvania Constitution[5] generally require that searches be predicated upon a warrant issued by a neutral and detached magistrate. Searches conducted outside the judicial process, that is, without a warrant, are generally deemed unreasonable for constitutional purposes. *Commonwealth v. Holzer*, 480 Pa. 93, 102,

**3.** "The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights. The defendant may testify at such hearing, and, if he does so, does not thereby waive his right to remain silent during the trial." Pa.R.Crim.P. 323(h).

**4.** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

**5.** "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." PA. CONST. art. 1, § 8.

389 A.2d 101, 106 (1978) (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). However, a well established exception to the warrant requirement exists for certain automobile searches. *Commonwealth v. Milyak,* 508 Pa. 2, 7–8, 493 A.2d 1346, 1349 (1985).

The automobile exception was first enunciated by the United States Supreme Court in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Chief Justice Taft, writing for the majority, traced the history of the Fourth Amendment and the legislative enactments of the First, Second and Fourth Congresses. In so doing, the Supreme Court concluded that "a difference [was] made as to the necessity for a search warrant between goods subject to forfeiture, when concealed in a dwelling house or similar place, and like goods in course of transportation and concealed in a movable vessel where they readily could be put out of reach of a search warrant." *Carroll,* 267 U.S. at 151, 45 S.Ct. at 284. More specifically, the Court held that

> since the beginning of the government, [the guaranty of freedom from unreasonable searches and seizures has been construed] as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

*Id.* at 153, 45 S.Ct. at 285.

Having concluded that impracticality in securing a warrant could permit a warrantless search for contraband carried in a vehicle, the Supreme Court addressed the circumstances under which such a search would be constitutionally permissible. The Court opined that "[t]he measure of legality of such a seizure is therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband ... therein...." *Id.* at 155–56, 45 S.Ct. at 286.

Subsequent to *Carroll,* the United States Supreme Court also determined that given probable cause to search an automobile, "[f]or constitutional purposes, [there is] no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant." *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981 (1970).

When reviewing warrantless automobile searches in this Commonwealth, we have constantly held that "there is no 'automobile exception' as such and [that] the constitutional protections are applicable to searches and seizures of a person's car." *Commonwealth v. Holzer,* 480 Pa. 93, 103, 389 A.2d 101, 106 (1978) (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). Recognizing that principle, we have nevertheless described two reasons why exigent circumstances often excuse the need to secure a warrant: "First, a vehicle is highly mobile and the likelihood is therefore great that it and its contents may never be found if police were prohibited from immobilizing it until a warrant can be secured"; and "[s]econd, one's expectation of privacy with respect to an automobile is *significantly less* than that relating to one's home or office." *Id.* (citations omitted).[6]

In *Commonwealth v. Milyak,* 508 Pa. 2, 493 A.2d 1346 (1985), the defendant sought to suppress evidence which police had obtained by searching his vehicle without a warrant. In that case, we reiterated that

there is an established departure from the warrant requirement for certain automobile searches based on the inherent mobility of vehicles, with the consequent practical problems in obtaining a warrant prior to infringing a legitimate expectation of privacy, and on the "diminished expectation of privacy which is accorded automobiles because of their

6. In 1968, this Court recognized that "sometimes [it] may be reasonable to search a movable vehicle without a warrant," however, we nevertheless held that "the movability of the area to be searched is not alone a sufficiently 'exigent circumstance' to justify a warrantless search." *Commonwealth v. Cockfield,* 431 Pa. 639, 644, 246 A.2d 381, 384 (1968).

open construction, their function, and their subjection to a myriad of state regulations."

*Commonwealth v. Milyak,* 508 Pa. 2, 7–8, 493 A.2d 1346, 1349 (1985) (citing *Commonwealth v. Timko,* 491 Pa. 32, 38, 417 A.2d 620, 623 (1980)). Furthermore, in order for a warrantless search to fit within the exception,

an officer must have independent probable cause to believe that a felony has been committed by the occupants of the vehicle, or that it has been used in the furtherance of the commission of a felony, or the officer must have a basis for believing that evidence of a crime is concealed within the vehicle, or that there are weapons therein which are accessible to the occupants.

*Id.* at 8, 493 A.2d at 1349 (citing *Commonwealth v. Lewis,* 442 Pa. 98, 101, 275 A.2d 51, 52 (1971)). Consequently, based upon state and federal constitutional standards, we concluded that "where there exists probable cause related to the vehicle or its occupants, a search of the vehicle is permissible." *Id.*

In 1988, we had the opportunity to review another automobile exception case. In *Commonwealth v. Baker,* 518 Pa. 145, 541 A.2d 1381 (1988), the police had received a tip from a reliable informant that defendant was carrying a gun in his automobile. A few minutes after having received the tip, the police discovered defendant's vehicle in a parking lot. A search of defendant's vehicle revealed a six-inch revolver under the driver's seat. We agreed with the Superior Court that the gun was admissible evidence because the need for a warrant was excused by the presence of probable cause and exigent circumstances. *Id.* at 148, 541 A.2d at 1383. We discussed the constitutional analysis as follows:

It is well established that automobiles are not *per se* unprotected by the warrant requirements of the Fourth Amendment, and of Art. 1, § 8 of the Pennsylvania constitution. *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101 (1978). Nevertheless, certain exigencies may render the obtaining of a warrant not reasonably practicable under the circumstances of a given case, and when that occurs, vehicle searches conducted without warrants have been deemed

proper where probable cause was present. See *Commonwealth v. Milyak*, 508 Pa. 2, 493 A.2d 1346 (1985); *Commonwealth v. Holzer*, [480 Pa. 93, 389 A.2d 101 (1978)]; *Commonwealth v. Lewis*, 442 Pa. 98, 275 A.2d 51 (1971)....

*Id.*

In *Baker*, we recognized that the search of defendant's vehicle took place just thirty minutes after the information from the reliable informant had been received by the police. Because of the tipster's reliability and because the police were able to corroborate independently the type of vehicle in which defendant was riding, probable cause existed to conduct the search, and, as a result, "the exigencies of the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search proper." *Id.* at 149, 541 A.2d at 1383. However, we specifically noted that "[t]his is not a case where police knew hours in advance that a particular vehicle carrying evidence of crime would be parked in a particular locale, such that it would have been reasonably practicable to obtain a search warrant before encountering the vehicle to be searched." *Id.*

In 1991, we again addressed the constitutionality of a warrantless automobile search, having been asked to determine whether there was sufficient probable cause to search the automobile, and if so, were the circumstances such that a warrant was not required. *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988 (1991). In that case, police had received information from two reliable informants regarding defendants' drug dealing activities. The police received tips on November 15, 1985, November 23, 1985 and November 27, 1985. Each time, the police were informed that the defendants were coming to York to sell cocaine, and, at least on one occasion, the police had been informed where the deliveries were taking place. The type of vehicle which the defendants used had been established on November 15, 1985. On November 27, 1985, the police spotted the defendants' car pulling away from the residence which the informant had described as the delivery location. The police stopped the defendants and conducted a search of the car.

We affirmed the trial court's denial of the defendants' motion to suppress, beginning our discussion by analyzing whether, under the "totality of the circumstances" test, the police had sufficient probable cause to search the vehicle. We concluded that they did. Thereafter, we addressed the defendants' argument that no exigencies existed especially because the police had adequate time within which to secure a warrant. We held that because the police encountered defendants' vehicle as it was moving away from the alleged delivery locale, there was no opportunity for the police to secure a warrant. We concluded that "where police do not have advance knowledge that 'a *particular* vehicle carrying evidence of crime would be parked in a *particular* locale, . . . the exigencies of the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search [without a warrant] proper.'" *Commonwealth v. Rodriguez*, 526 Pa. 268, 274, 585 A.2d 988, 991 (1991) (citing *Commonwealth v. Baker*, 518 Pa. 145, 149, 541 A.2d 1381, 1383 (1988)). Accordingly, we held that both probable cause and exigent circumstances existed to justify the warrantless search of the automobile.

Recently, we again had the occasion to address the admissibility of evidence seized during a warrantless search of an automobile in *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995). In that case, the Pittsburgh Police Department had received numerous telephone calls from anonymous sources. Those sources informed the police that William White and Henry Bennett were dealing drugs, and furthermore, they described the location where the drug sales were taking place. After corroborating that information with information received from a confidential informant, the police arranged a controlled drug purchase in January of 1990, which was observed by two officers.

One month later, the police received information from the informant that he had observed a large supply of cocaine at Bennett's residence, that drugs were being transported back and forth between Bennett's and White's homes and that a sale was scheduled for Saturday, February 17, 1990, behind

Abbot's Beer Distributor. Based on this information, the police arranged for surveillance of the area. Prior to setting up surveillance, the two officers who had observed the January drug transaction briefed other members of the police department, informing them that a blue car was expected to be involved in a drug transaction.

Furthermore, before actually conducting the surveillance, police sought and obtained search warrants for Bennett's residence, Bennett's vehicle, Bennett's person, White's residence and White's person, but not White's automobile. While conducting the surveillance, police observed White drive his automobile into the location of the alleged sale. At that point, an unidentified individual got into the car. The police surrounded White's vehicle and took its two occupants into police custody. A warrantless search of White's automobile was conducted and cocaine was discovered.

The Superior Court reversed the trial court's suppression order, concluding that the warrantless search had been properly conducted pursuant to the automobile exception. The Superior Court reasoned that because the officers did not know which vehicle would be used to facilitate the transaction, the use of White's automobile was an unforeseeable circumstance which provided the necessary exigency.

We disagreed. Based upon an earlier per curiam affirmance in *Commonwealth v. Ionata*, 518 Pa. 472, 544 A.2d 917 (1988),[7] we held that when the police have ample advance

7. Justice Flaherty wrote the opinion in support of affirmance in *Ionata*. Therein, he noted that the police had advance information that defendant would be transporting contraband in his vehicle. In that regard, Justice Flaherty determined that

[b]y neglecting to obtain a warrant covering the vehicle, and by approaching appellee immediately upon his arrival, the officers inexplicably took the risk that appellee would at least temporarily have kept the drugs in the automobile, and, thus, they took the risk that appellee would not yet have moved any of the contraband into areas covered by the search warrant.

In short, this case does not involve a search conducted under exigent circumstances; rather, it involves a search undertaken after the police had, through oversight or lack of planning, failed to obtain a warrant to search a vehicle that they knew hours in advance would be parked at appellee's apartment after it had been used to transport

information that a search of an automobile is likely to occur in conjunction with apprehension of a suspect, "a warrant is required before the automobile may be searched." *Commonwealth v. White*, 543 Pa. at 53, 669 A.2d at 900. Moreover, based upon our analysis of *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), we held that

> although the Fourth Amendment generally requires probable cause to be determined and a warrant to be issued by a magistrate before a search may be conducted, *unforeseen circumstances involving the search of an automobile coupled with the presence of probable cause, may excuse the requirement for a search warrant.* In *Ionata* and in this case, there were no unforeseen circumstances. Police knew in advance what automobiles might be involved and could have requested warrants for the search of the automobiles, just as they did for persons and dwellings.

*Id.* at 53, 669 A.2d at 901 (footnote omitted) (emphasis supplied).

We also disagreed with the Superior Court's conclusion that the officers' lack of knowledge with respect to which vehicle would be used constituted an unforeseen circumstance. Rather, we concluded that the lack of knowledge was not sufficient to qualify as an unforeseen circumstance because the "[p]olice could have drafted their request for a warrant in terms that were 'as particular as is reasonably possible' . . . in order to secure the warrant." *Id.* at 53 n. 3, 669 A.2d at 901 n. 3 (citing *Commonwealth v. Grossman*, 521 Pa. 290, 296, 555 A.2d 896, 899 (1989)).

▮ Therefore, we conclude that this Commonwealth's jurisprudence of the automobile exception has long required both the existence of probable cause and the presence of exigent circumstances to justify a warrantless search. Fur-

> contraband. Indeed, it would be difficult to conceive of a case where the circumstances surrounding a challenged search would be more clearly non-exigent than those presented here. Thus, inasmuch as obtaining a warrant would certainly have been practicable, suppression of the items seized in the instant search was entirely proper. *Commonwealth v. Ionata*, 518 Pa. 472, 479, 544 A.2d 917, 920–921 (1988).

thermore, we have consistently recognized that when police have advance information that a particular vehicle carrying evidence of a crime would be situated at a particular locale, such that sufficient time exists to obtain a warrant, the failure of the police to secure a warrant prior to searching the vehicle will render the search unreasonable. This holding is equally applicable when police have advance information that a particular vehicle carrying contraband to be used in the commission of a crime will be parked in a specific location.

Consequently, the Superior Court erroneously held that evidence seized during a warrantless automobile search was admissible without first requiring the Commonwealth to demonstrate that exigent circumstances prevented them from obtaining a warrant.

Therefore, we now turn to Appellant's argument that the Court of Common Pleas correctly determined that the warrantless search of this stationary vehicle violated constitutional guarantees because the police had substantial time, information and opportunity to obtain a warrant in advance of the search. As such, we must determine whether the suppression court's factual findings are supported in the record.

A review of the record indicates that Officer Nimmo conducted surveillance of Auburn Street on August 24, 1990. At that time, he was already familiar with that particular street as he had made numerous narcotics arrests there within the previous six weeks. Furthermore, he had information from various sources regarding drug sales on Auburn Street and the use of a Lincoln automobile. At the suppression hearing, testimony with respect to Officer Nimmo's prior knowledge was as follows:

Q. incidentally, what was your purpose in going to that surveillance point that day?

A. The information I had that cocaine was being sold at that location. I had further information that the one male received large quantities of cocaine. My intention was to try to take off what was being delivered.

         \*      \*      \*      \*      \*      \*

102

Q. Well, what information did you have about the delivery taking place?

A. I had information that Raphael Melendez lived at 913 Auburn Street. He was the one that had the workers on the street and that he had received, he would receive his cocaine. It would be delivered on Auburn Street and he used several cars to store the stuff. One was a Lincoln. There was another car on the north side of the street. I don't recall what that was now. It was an abandoned car. There was no tags on that.

Q. And when did you get that information?

A. I had gotten that information from numerous, from several places, from my own investigation, from other people that had been arrested, from people that called from the neighborhood.

Q. And how long had you had that information before you went to make your surveillance that day?

A. I had been doing surveillances on that street and I had made several arrests, other arrests.

The trial court also had the following exchange with Officer Nimmo:

Q. Could you describe the physical condition of [the Lincoln] to me?

A. The outside, the side and the rear that I saw looked fairly decent. It wasn't in new condition.

Q. Did it have four tires on it?

A. Four tires. It had the glass, It looked like it would be legal for the highway.

Q. It had a tag?

A. Yes, sir.

Q. Is it your testimony that before you went out to Auburn Street you had specific information about this Lincoln automobile before you got there that day?

A. That and another car, yes, sir.

Moreover, Officer Scarpato testified regarding the back-up assistance as follows:

Q. on that particular detail, you were part of the surveillance detail?

A. I was part of the backup unit.

Q. The backup unit for the surveillance detail.

A. That's correct.

Q. How many brother officers were with you in that backup unit?

A. In my vehicle, there was three other officers. And there were two more vehicles. I'm not sure how many officers were in that.

Q. Had you met to discuss the game plan, if you will, prior to setting up the surveillance?

A. [After Judge Lord overruled an objection of counsel] We had talked about it up in headquarters prior to going out.

Q. And how many people were part of that group that talked at headquarters and ultimately went out to the field?

A. I would say eight or nine.

The suppression court concluded that because Officer Nimmo had information prior to establishing surveillance, the automobile exception was inapplicable. Specifically, the court determined that the exception based on exigencies was inapplicable because "the police appear to have known well in advance of their search that a particular vehicle, the blue Lincoln, carrying evidence of a crime would be parked in a particular location, the 900 block of Auburn Street." *Commonwealth v. Labron,* Nos. 2318–29, slip op. at 8, 428 Pa.Super. 616, 626 A.2d 646 (C.P. Philadelphia County, July 31, 1992).

Based upon our review of the record, we believe that sufficient evidence exists in the record to support the suppression court's finding that Officer Nimmo had sufficient, perhaps even specific, information about the blue Lincoln automobile prior to setting up surveillance. He had information from numerous sources, including his own participation in other arrests, that drug sales were occurring on Auburn Street. He

was investigating Melendez because he also had information that Melendez was in charge of the drug sales on that street. He additionally had information that Melendez used several cars parked on the street in which to store the drugs and that a Lincoln was one of those cars. Furthermore, Officer Nimmo testified that prior to setting up the surveillance, he had specific information about that Lincoln.

Therefore, we reverse the order of the Superior Court.

CASTILLE, J., files a dissenting opinion.

MONTEMURO, J., participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f).

CASTILLE, Justice, dissenting.

Although the majority correctly characterizes Pennsylvania law regarding the "automobile exception" to the warrant requirement, I write separately only because I do not believe that this case should have been allowed to proceed to this point because, although the Commonwealth inexplicably has conceded standing in its brief, I do not believe appellant has such standing as to have a right to be before this or any Court to seek suppression of the evidence in issue. I, therefore, dissent to the majority's consideration of the merits of appellant's suppression claim as I do not believe this Court should rule upon matters wherein the complaining party has no standing. I further disagree with the majority's reversal of the Superior Court because even if appellant has standing, he nevertheless does not have a reasonable expectation of privacy that would warrant suppression of the illegal drugs seized from a third party's car.

Although these issues upon which I would base our affirmance of the Superior Court's ruling were not raised by the Commonwealth either on appeal to the Superior Court or in the brief to this Court, it is well established that this Court may affirm the order of the court below if the result it reached is correct for any reason. *Commonwealth v. Allsup*, 481 Pa. 313, 317, 392 A.2d 1309, 1311 (1978) (Superior Court based

ruling on Constitutional issue, but this Court raised the issue of statutory interpretation *sua sponte* and affirmed on those grounds); *Commonwealth v. Triplett*, 476 Pa. 83, 90 n. 10, 381 A.2d 877, 881 n. 10 (1977) (Court *sua sponte* raised waiver issue and based affirmed order on those grounds); *Commonwealth v. Colon*, 461 Pa. 577, 585 n. 5, 337 A.2d 554, 558 n. 5 (1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976) (Court *sua sponte* found statement which was suppressed by trial court as hearsay to be inadmissible because not relevant); *Commonwealth v. Hines*, 461 Pa. 271, 273 n. 35, 336 A.2d 280, 282 n. 3 (1975) ("While the question of waiver has not been raised by any party to this litigation, this Court may affirm an order if it is correct for any reason."), *citations omitted.* Because appellant did not have standing and therefore did not have a right to bring the issue of the validity of the search before the courts, I believe this issue should be raised sua sponte and I would affirm the order of the Superior Court on those grounds.

In order to challenge the admission of evidence at a criminal trial, a defendant must, as a fundamental prerequisite, show that he has standing to challenge the search or seizure by which the government obtained the evidence. *See Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 428–29, 58 L.Ed.2d 387 (1978) (courts applying federal law must first determine whether a particular search violated protected fourth amendment interests before examining the legality of the search). *See also Commonwealth v. Peterson*, 535 Pa. 492, 497, 636 A.2d 615, 617 (1993) (having first had his standing acknowledged, a criminal defendant is only then permitted to assert the merits of his suppression motion). The standing requirement in the criminal suppression context narrows the reach of the exclusionary rule by limiting the field of individuals permitted to challenge an illegal search or seizure. The standing requirement thereby helps conserve scarce judicial resources. *See Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 191, 346 A.2d 269, 280 (1975).

The United States Supreme Court limits Fourth Amendment standing to those criminal defendants who can demon-

strate a "legitimate expectation of privacy" in an item seized or the area searched. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980) (defendants must show not just that the search was illegal, but that the search violated the defendant's legitimate expectation of privacy in the area searched); *Rakas, supra,* 439 U.S. at 140, 99 S.Ct. at 428–29 (since the Fourth Amendment protects personal rights, a government search that does not invade an area in which the defendant has a legitimate expectation of privacy does not violate the defendant's fourth amendment rights). To confer standing under the federal standard, the defendant's expectation of privacy must be both (1) subjectively held; and (2) reasonably justified. *Rakas, supra* at 143 & n. 12, 99 S.Ct. at 430 & n. 12.

Under Article I, Section 8 of the Pennsylvania Constitution, however, this Court looks to several additional factors to determine whether a criminal defendant has standing to challenge the admission of evidence against him. To gain standing to challenge the admission of evidence at a criminal trial, a Pennsylvania defendant must prove that (1) he was present on the premises at the time the police searched it or seized evidence from it; or (2) he has a possessory interest in the evidence seized; or (3) the offense with which he is charged includes "possession" at the time of the contested search as an essential element of the prosecution's case; or (4) he has a proprietary or possessory interest in the searched premises. *Commonwealth v. Peterkin,* 511 Pa. 299, 309–311, 513 A.2d 373, 378 (1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987); *Commonwealth v. Treftz,* 465 Pa. 614, 621–622, 351 A.2d 265, 268, *cert. denied,* 426 U.S. 940, 96 S.Ct. 2658, 49 L.Ed.2d 392 (1976) (*adopting Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973)).

Here, although Melendez or even Santiago may have been able to assert a colorable standing claim on the instant facts, appellant could not assert any interest sufficient to confer upon him the standing necessary to challenge the admission of the evidence against him under the above four-pronged test. First, appellant was not "present" on the "premises" of the

blue Lincoln at the time the police searched its trunk because appellant was not a passenger in the car but was in fact standing away from the car at the time of his arrest and the search of the trunk. *See Commonwealth v. Gallagher,* 276 Pa.Super. 593, 595–597, 419 A.2d 616, 618–619 (1980) (since appellant was not a passenger of the van at the time the police searched the van, appellant was not "present" at the premises searched). *See also Commonwealth v. Johnson,* 431 Pa.Super. 291, 297, 636 A.2d 656, 659 (1994), *appeal denied,* 539 Pa. 646, 651 A.2d 534 (1994) (defendant abandoned reasonable expectation of privacy in bag containing contraband by placing it in a tree in a public park and standing 10 to 12 feet away and approaching bag only to show crack cocaine in bag to potential customer).

Second, appellant cannot reasonably assert any possessory interest sufficient to give him standing in the cocaine seized from the trunk of the car. The car belonged to Melendez and appellant's access to the car was regulated by Melendez and Santiago. Appellant could not assert a reasonable claim to a possessory interest in the cocaine inside the trunk of the car since access was controlled by others.

Third, the offense with which appellant was charged did not include possession *at the time of the contested search and seizure* as an essential element of the prosecution's case. The Commonwealth charged appellant only with delivery of a controlled substance, not possession, and with criminal conspiracy as a result of his delivery of a controlled substance to Melendez. When a person "meaningfully abdicates his control, ownership or possessory interest" in a possession he no longer has a Constitutionally protected interest in that possession. *Commonwealth v. Sell,* 504 Pa. 46, 67, 470 A.2d 457, 469 (1983).[1] Once appellant delivered the controlled substance to

1. In *Sell,* this Court declined to abrogate the doctrine of automatic standing as the United States Supreme Court had done in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1978). The appellant in that case had been charged with receiving stolen property. This Court held that the appellant had automatic standing because possession was an essential element of the crime charged. That holding was based on the fact that *receiving,* by definition, entails the

Melendez and Santiago, he had surrendered his interest there-
in and was no longer entitled to the constitutional protection
against search and seizure afforded personal property. *See
also Pennsylvania Standard Criminal Instructions*
§ 16.13(a)(30)(B) (Pa.Bar Inst.1980) (noting no provision for
the defendant's possession of a controlled substance necessary
to convict the defendant of delivery of a controlled substance).

In *Peterkin, supra,* this Court held that the appellant had
no standing to challenge the search of the home of an acquain-
tance in which a firearm was found because the only possesso-
ry crime with which he was charged was possession of an
instrument of crime in the commission of a robbery and double
murder. This Court determined that the appellant was not
entitled to automatic standing because the Commonwealth's
case against him on that possessory crime was not dependent
on the appellant's possession of the firearm at the time of the
search, but rather depended on his possession of the firearm
at the time of the murders and robbery. Under this analysis,
whether appellant in the case *sub judice* possessed the con-
trolled substance at some point before he delivered it to
Melendez is irrelevant for the purposes of automatic standing.
Because appellant did not actually or constructively possess
any controlled substance at the time of the contested search
he is not entitled to automatic standing under this prong.

Finally, appellant cannot claim any proprietary interest in
the automobile because Melendez owned the blue Lincoln, not
appellant. Further, appellant cannot claim any possessory
interest in the car because Melendez, the car's owner, con-
trolled access to the trunk of the car. Even when Melendez
left the scene, he left the keys to the car with Santiago, not
appellant. Although Santiago later directed appellant to open
the trunk of the car to put another plastic bag into the trunk,
appellant complied with his instructions and then immediately
returned the keys to Santiago. Since the owner of the car,
Melendez, entrusted the keys to the car only to Santiago and
since appellant only had access to the keys and to the trunk of

acquisition of possession. *Delivery,* on the other hand, entails surren-
dering possession to another.

the car at Santiago's discretion, appellant cannot reasonably claim any possessory interest in the car or contents therein. *See Peterkin, supra* (appellant had no proprietary or possessory interest in the home of an acquaintance).

Accordingly, under *Peterkin,* appellant cannot assert any interest sufficient to confer standing to challenge the admission of the cocaine into evidence at his criminal trial. On this basis, the majority opinion erred in considering the underlying merits of appellant's suppression claim.

Even if appellant has standing to challenge the search, he nevertheless does not have a reasonable expectation of privacy in the items seized or the place searched that would warrant suppression. *Peterson, supra.* In order to invoke the remedy of suppression, appellant "must demonstrate that he held such a privacy interest which was actual, societally sanctioned as reasonable, and justifiable in the place invaded that the warrantless entry of the police violated his right under the Constitution of this Commonwealth, Article 1, Section 8, to be 'secure . . . against unreasonable searches and seizures.' " *Id.* (citation omitted). Because appellant did not have a possessory or proprietary interest in the place searched or the items seized and was not present when the search was conducted, he did not have a legitimate expectation of privacy which would entitle him to suppression of the cocaine. Therefore, even if appellant had standing to challenge the search and seizure, he is not entitled to suppression. *Id.* (appellant is not entitled to suppression of items seized in search of abandoned storefront because he did not have an expectation of privacy which society recognizes as legitimate); *Commonwealth v. McCullum,* 529 Pa. 117, 134, 602 A.2d 313, 321 (1992) (appellant is not entitled to suppression of items seized in search of another's home because he did not have a legitimate expectation of privacy in the premises searched).

Unfortunately, the majority's decision vastly expands the reach of the privacy protections of the Pennsylvania and United States Constitutions to areas where it is not warranted—that is, to situations where a defendant has no legitimate expectation of privacy, has no ownership interest at stake and

110

was not present at or in the location searched at the time of the search. In so doing, a criminal in Pennsylvania now arguably even has standing to challenge drugs he delivered to another person but were then seized from that person by a police officer. This decision gives unwarranted protection to the purveyors of death in Pennsylvania's communities and effectively ties the hands of law enforcement in its efforts to root out the scourge of drugs in our society. I therefore respectfully dissent.