708 A.2d 1251

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Lawrence ALEXANDER, Appellant.**

Supreme Court of Pennsylvania.

Argued March 4, 1996.

Decided March 5, 1998.

2

Michael Anthony DeFino, Aaron Finestone, Philadelphia, for Lawrence Alexander.

Catherine Marshall, Hugh J. Burns, Jr., Philadelphia, for Com.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

CASTILLE, Justice.

The issue before this Court is whether electronically intercepted conversations in a physician's office between the physician (appellant) and his patient regarding illegal drug activity warrant suppression where the interception was undertaken without a warrant but with the patient's consent and after a court determination that probable cause existed for seizure of the conversations. For the reasons set forth below, we affirm the Superior Court's ruling affirming the trial court's denial of appellant's suppression motion.

The facts of the case *sub judice* are not in dispute. The evidence establishes that appellant, a licensed physician, and the patient met in 1975 when appellant began treating the patient. Appellant stopped providing medical treatment to the patient for a number of years. However, in 1983, appellant, in violation of the Health and Safety Act, began writing pharmaceutical prescriptions for the patient for the controlled substance Dilaudid, a narcotic analgesic and powerful pain killer to which the patient was addicted. In some instances the patient paid appellant in cash and at other times appellant and the patient engaged in a bartering system whereby appellant supplied the patient with Dilaudid in exchange for the

patient's delivery to him of various stolen appliances such as video equipment and televisions.

In 1986, appellant decided to expand this enterprise and conspired with the patient to sell Dilaudid illegally to addicts on appellant's behalf. Appellant began writing Dilaudid prescriptions for the patient for batches of 100 pills. So as not to be detected, appellant directed the patient to have the prescriptions filled at different locations. Upon redeeming the prescription, the patient would sell the pills to other drug addicts and would then divide the proceeds from the illegal sales with appellant. Appellant also continued to write illegal prescriptions for the patient's own addiction.

In May 1988, the patient was arrested on unrelated drug charges. However, the charges were dismissed on June 27, 1988, for lack of evidence. Nevertheless, the patient, who overcame his addiction to Dilaudid while in custody on the pending charges, decided he wanted to change his way of life for the better and began cooperating with police in their investigation of appellant's illegal drug dispensing activity. Hence, shortly after his release, the patient approached Detective Lynch of the Philadelphia Police Narcotics Unit. The patient detailed the extent of appellant's illegal drug operation based upon his personal experiences and told Detective Lynch that he was willing to cooperate with the police in an investigation of appellant's activities.

On July 8, 1988, the patient, now informant, in coordination with the police investigators, arranged a meeting with appellant in the parking lot of appellant's medical office. At that location, appellant again resumed his illegal activities and wrote a prescription for the patient for 100 Dilaudids and the two agreed that they would share the proceeds of the sale of the drugs. The police then accompanied the patient to a pharmacy where the prescriptions were filled. Later that same day, the patient telephoned appellant and told him that he would pay appellant his share of the profits from the sale of the Dilaudid on July 11, 1988.

In the meantime, in order to electronically monitor the patient's future communications with appellant under the Pennsylvania Wiretapping and Electronic Surveillance Act of 1978 (the "Wiretap Act" or "Act"),[1] the Commonwealth obtained the patient's consent to wear a concealed recording device on his person. On July 11, 1988, the Commonwealth also obtained a court order from the Court of Common Pleas of Philadelphia County authorizing the use of electronic surveillance equipment for a period of ten days to intercept and record the one-party consensual conversations between the patient and appellant.[2] Consequently, the patient wore a "body wire" consisting of a concealed microphone connected to a tape recorder when he met with appellant on July 11, 12, 14 and 15 of 1988.[3] All of the recorded conversations took place in appellant's medical office.

As a result of the investigation, the police arrested appellant and charged him with numerous counts of illegally prescribing controlled substances,[4] prescribing controlled substances to a person known to be drug-dependent,[5] delivery of a controlled

1. 18 Pa.C.S. § 5701, *et seq.*

2. Specifically, the order provided, in pertinent part:

   *IT APPEARING* that the application has been made in good faith in the furtherance of a pending criminal investigation and that there is reason to believe the aforementioned residence and the other unknown premises will be used in connection with criminal activity and, based upon the affidavit, that there is probable cause to believe that the criminal activity is ongoing;

   *IT IS ORDERED,* pursuant to Section 5704(2) Chapter 57, Title 18, and *Commonwealth v. Schaeffer,* 370 Pa.Super. Ct. 179, 536 A.2d 354 (1987), that District Attorney's personnel are authorized to use electronic surveillance equipment to intercept and record one-party conversations occurring inside the office of Lawrence Alexander located at 6190 Rising Sun Avenue, Philadelphia, PA., and at any other location Lawrence Alexander leads or directs the consenting individual to, for a period ot [sic] time not to exceed ten (10) days.

3. The conversations between appellant and the informant were recorded on these days except for July 12, 1988, when the recorder apparently malfunctioned.

4. 35 P.S. § 780–113(a)(14).

5. 35 P.S. § 780–113(a)(13).

substance,[6] and criminal conspiracy.[7] Appellant filed a motion to suppress the tape recordings on the basis that the recordings of his conversations with his patient were made without a search warrant. Following a hearing, the trial court denied the motion to suppress and ultimately convicted appellant of 134 counts of illegally prescribing controlled substances, 134 counts of prescribing controlled substances to a person known to be drug-dependent, 98 counts of delivery of a controlled substance, and one count of criminal conspiracy. The trial court sentenced appellant to a term of twelve (12) to twenty-four (24) years imprisonment. The Superior Court affirmed appellant's judgment of sentence. This appeal followed.

Appellant claims that under Article 1, § 8 of the Pennsylvania Constitution, the police were required to obtain a search warrant prior to intercepting his conversations in his professional office.[8] We disagree.

■ At the outset, although Pennsylvania's Wiretap Act provides limitations on wiretapping and most other electronic interception of communications, *see* 18 Pa.C.S. § 5703,[9] war-

6. 35 P.S. § 780–113(a)(30).

7. 18 Pa.C.S. § 903.

8. Article 1, § 8 of the Constitution of Pennsylvania provides:
The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizure, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

9. Section 5703 in effect at the time of the interception provided:
Interception, disclosure or use of wire or oral communications.
Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:
(1) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication;
(2) willfully discloses or endeavors to disclose to any other person the contents of any wire or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication: or
(3) willfully uses or endeavors to use the contents of any wire or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication.

rantless electronic interception of communications under § 5704(2) of the Act may be performed in certain circumstances where one party consents to the interception. At the time of the interception at issue in the case, § 5704(2) provided that investigative or law enforcement officers or any person acting at the direction or request of such officers could legally intercept a wire or oral communication involving suspected criminal activities where:

(i) such officer or person is a party to the communication; or

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception. . . .

18 Pa.C.S. § 5704(2)(i)–(ii).[10]

Here, the evidence at the suppression hearing demonstrated that the assistant district attorney from the Philadelphia District Attorney's Office designated to review requests for electronic surveillance pursuant to the Wiretap Act reviewed the facts of the instant matter, determined that the informant's consent to wear a body wire was voluntary, and

(Amended in October 21, 1988, P.L. 1000, No. 115, § 5, immediately effective). Although the constitutionality of the Wiretap Act is not at issue in this case, this Court has held that one-party consensual interceptions do not violate the Fourth Amendment or Article I, § 8 of the Pennsylvania Constitution. *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81 (1988), *aff'd on other grounds*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990); *Commonwealth v. Rodriguez*, 519 Pa. 415, 417, 548 A.2d 1211, 1212 (1988); *see also United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) (one-party consensual interceptions do not violate the United States Constitution).

10. The Act was later amended on October 21, 1988, P.L. 1000, No. 115, § 5 (effective immediately); and on September 26, 1995, P.L. 1056, No. 20(SSI), § 2 (eff. in 60 days).

authorized the interception of appellant's conversations. Thus, given that the interception of appellant's conversations was made pursuant to the Wiretap Act, appellant's recorded conversations were properly admitted into evidence under the Act.

Notwithstanding the Commonwealth's full compliance with the Act, appellant argues that based upon the reasoning of *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994), this Court should find that the interceptions in this case without a warrant violated Article 1, § 8. To resolve appellant's claim, we must first look at the seminal case of *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988) (Zappala and Larsen, JJ., dissenting), *aff'd on other grounds, Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), and its progeny.

In *Blystone,* this Court specifically examined the issue of whether warrantless one-party consensual interceptions violated Article 1, § 8 of the Pennsylvania Constitution, and found that they did not. In *Blystone,* the appellant (Blystone) and three of his cohorts picked up and robbed a hitchhiker at gunpoint, ultimately murdering the hitchhiker after robbing him of thirteen dollars. Acting with an informant's consent, police monitored and recorded a conversation Blystone had with the informant while the two of them sat in Blystone's truck about how Blystone had killed the hitchhiker.

In reviewing the appellant's claim that the warrantless interception under the Act violated Article 1, § 8, the Court held that in order to determine whether a constitutional violation had occurred, it "must examine: first, whether appellant has exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable." *Id.* at 463–64, 549 A.2d at 87. Only if there is a reasonable expectation of privacy is a warrant required.

Recognizing that Pennsylvania's Wiretap Act was based upon its federal counterpart, the Court looked to the United States Supreme Court's analysis of the federal wiretapping act

under the Fourth Amendment. The United States Supreme Court held, in sum, that a person cannot have a justifiable and constitutionally protected expectation that a person with whom he is conversing will not then later reveal that conversation to police; hence, one-party consensual electronic interceptions do not violate the Fourth Amendment's prohibition against unreasonable searches and seizure. *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). *Accord United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), *reh'g. denied*, 402 U.S. 990, 91 S.Ct. 1643, 29 L.Ed.2d 156 (1971) (plurality opinion).[11]

Based upon this reasoning, this Court in *Blystone* similarly held that the Pennsylvania Wiretap Act allowing similar warrantless one-party consensual interceptions did not violate Article I, § 8 of the Pennsylvania Constitution:

What one chooses to do with another's secrets may differ from the expectation of the teller, but it is no longer his secret. How, when and to whom the confidant discloses the confidence is his choosing. He may whisper it, write it, or in modern times immediately broadcast it as he hears it.

519 Pa. at 462–63, 549 A.2d at 87–88. As articulated by Mr. Justice Zappala in *Commonwealth v. Brion*, 539 Pa. 256, 652

---

**11.** As stated by Mr. Justice White in the lead opinion:

Concededly, a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person,

... (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency.... If the conduct and revelations made of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

*United States v. White*, 401 U.S. 745, 751, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971) (citations omitted).

A.2d 287, 288 (1994), discussed *infra*, "we found no constitutional defect in the statute because Blystone had no reasonable expectation of privacy once he chose to disclose his confidence to the informant." *Accord Commonwealth v. Rodriguez*, 519 Pa. 415, 548 A.2d 1211, 1213 (1988) (one-party consensual electronic interception of communications regarding a drug transaction did not violate Article I, § 8).

One year after *Blystone*, this Court decided *Commonwealth v. Henlen*, 522 Pa. 514, 564 A.2d 905 (1989), in which it reemphasized the principal that a person lacks an expectation of privacy in a communication once he discloses it to another person over whom he has no control. In *Henlen*, the issue was whether a person's secret tape recording of a conversation he had with another party violated the Act where the recording party did not have the approval of a governmental agency and there was no prior finding of probable cause by a neutral judicial authority before the recording took place. The appellant, a prison guard at Mercer County Jail, was suspected of stealing the personal belongings of an inmate at the jail and was interrogated at the jail by a state trooper. During the trooper's interrogation of the appellant at his work site, the appellant secretly tape recorded their conversation.

After the Commonwealth's investigation of the theft was concluded, the guard/appellant filed a complaint against the trooper alleging harassment, at which time the appellant turned over the recording to the Internal Affairs Division of the Pennsylvania State Police in order to support his complaint. The appellant was later convicted of violating the Wiretap Act as a result of the tape recording and appealed his conviction.

Under the Act, the interception of an "oral communication" is prohibited except under limited circumstances, as previously discussed. "Oral communication" was defined by the Act at the time as: "Any oral communications uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. § 5702. Writing for a unanimous court, Mr. Justice Zappala wrote:

[r]esolution of the issue of whether the conversation was an "oral communication" under the Act revolves around whether there was an expectation that the communication was not subject to interception under circumstances justifying such expectation.

522 Pa. at 517, 564 A.2d at 906. Thus, the crucial focus in *Henlen* was whether the trooper's disclosure of a communication to another person, over whom he had no control and who had no legal duty to keep the communication confidential, amounted to circumstances which would justify a protectable expectation that the communication would not be intercepted. The Court held that when "applying [the principles of *Blystone* ] to the instant case[, one] is led to the conclusion that the circumstances do not establish that [the trooper] possessed a justifiable expectation that his words would not be subject to interception." Thus, the Court held that there was no violation of the Act.[12]

In *Commonwealth v. Brion, supra,* a majority of this Court carved a limited exception to *Blystone* with respect to electronic interceptions in one's home. In *Brion,* a confidential informant wore a consensual body wire authorized by the District Attorney's office under the Wiretap Act when he entered Brion's home to purchase marijuana.[13] As a result of the intercepted and recorded conversation, Brion was charged with one count of possession of marijuana and one count of delivery of marijuana.

■ The trial court held that the taped conversations were inadmissible on the grounds that the one-party consensual interception violated Article I, § 8 of the Pennsylvania Constitution. On appeal, the Superior Court reversed. A majority of this Court reversed the Superior Court and remanded the matter for a new trial holding that even though a person had

12. Although *Henlen* did not involve a claim that the interception violated the Pennsylvania Constitution, it is instructive in defining what constitutes a protected "oral communication" under the Act.

13. Unlike the instant case, no prior judicial approval was obtained before the confidential informant in *Brion* proceeded with the body wire.

disclosed his communication to another person, thereby technically relinquishing his rights to the use or conveyance of that communication under the reasoning of *Blystone*, given the sanctity of a person's home, a person has a heightened expectation of privacy regarding his communications in his home under Article I, § 8 of the Pennsylvania Constitution.[14] The majority therefore held that one-party consensual interceptions of oral communications occurring within one's home are permitted only if there has been a prior determination of probable cause by a neutral, judicial authority. *Id.* at 261, 652 A.2d at 290 (1994) (Nix, C.J. filed a dissenting opinion in which Papadakos, and Castille, JJ. joined).

Appellant argues that since *Brion* requires a warrant before communications can be intercepted by police from one's home, a warrant was required before communications could be intercepted from his workplace. *Brion*, however, fails to provide relief in this matter for several reasons.

First, unlike the circumstances in *Brion*, here the Commonwealth *did* obtain a determination of probable cause by a neutral judicial authority before proceeding with the interception, even though the Act did not require such judicial involvement.[15]

---

14. "Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society." *Commonwealth v. Shaw*, 476 Pa. 543, 550, 383 A.2d 496, 499 (1978).

15. Appellant's argument that the affidavit and finding of probable cause should have been reduced to a search warrant and served on him is nonsensical. Such a requirement would entirely defeat the purpose of the electronic surveillance. Once served with a search warrant, and thereby apprised of the Commonwealth's intention to conduct electronic surveillance, a targeted suspect would then be fully aware of the purpose and time of the electronic surveillance and be able to tailor his conversations and actions accordingly, completely avoiding police detection of his criminal activities.

His argument that the Court of Common Pleas had no jurisdiction to make a determination of probable cause is also without merit. First, because we find that no probable cause determination was required for the workplace interception in this case, it is irrelevant which court actually made the probable cause determination. Second, although a majority of this Court in *Brion* held that the warrants required for electronic interception in a home be authorized by the Superior Court,

Second, we are not faced with an interception in one's home. Rather, the interception here occurred in appellant's workplace. The limited exception enunciated in *Brion* does not apply, and we decline appellant's invitation to broaden the ruling in *Brion* to cover the interceptions at appellant's workplace under the circumstances of this case.

A workplace, by its very nature, generally requires the proprietor's interaction with other persons in order to conduct business. While the proprietor's nature of contact with such other parties can vary in form, a workplace normally requires certain interaction with strangers or third parties over whom the proprietor has little control or about whom the proprietor knows very little beyond the nature of the business relationship. In fact, appellant himself admits in his brief that his "medical practice is open to the public." Appellant's Brief at p. 16.

While there may be some circumstances where this Court may be willing to recognize heightened levels of expectations of privacy in the workplace, for example where the communication sought to be intercepted is strictly internal (such as communications which may arise between an employee and employer) or where the communication regards something which may otherwise be protected by common law or by statute,[16] the case at hand fails to present such circumstances. Here, the patient (who could have been anyone including a police officer) was under no obligation to keep his conversations with appellant confidential and was not otherwise subject

the Court explained that it imposed such a procedure only because the General Assembly specifically provided that a judge of the Superior Court make probable cause determinations regarding other electronic surveillance (18 Pa.C.S. § 5708). Hence, only then for consistency did this Court require that a judge of the Superior Court also make the "probable cause/warrant" determination where there is a one-party consensual surveillance in one's home, not because such procedures were necessary to ensure constitutional protection. These arguments provide no relief for appellant.

**16.** Where an informant is employed by the suspect in the workplace, the suspect might arguably be entitled to expect a different degree of privacy as a result of the employer/employee relationship (e.g. protection of trade secrets, etc.). Such issues, however, are not before us in this matter and will have to wait resolution at a later date.

to appellant's control; thus, the physician had no reasonable expectation that the patient would in fact keep his oral communications private.

Nevertheless, appellant argues that by enactment of the patient/physician privilege, the legislature has deemed his expectation of privacy regarding communications with a patient to be reasonable. Therefore, he argues, he is protected under the Act. Appellant misconstrues the privilege.

Even the most cursory reading of the statutory privilege makes it clear that appellant's argument lacks merit:

5929. Physicians not to disclose information.

No physician shall be allowed, in any civil matter, to disclose any information which he acquired attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, ... without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries.

42 Pa.C.S. § 5929. As is obvious from the language of the statute, the privilege applies only in civil matters. Furthermore, by statutorily recognizing the patient/physician privilege, the General Assembly conferred unto the *patient,* not the doctor, a heightened expectation of privacy with respect to communications between the doctor and himself as it limits what *the physician* can divulge to third parties. Absent the patient's waiver of this protection or a lawsuit by the patient against the doctor, a physician is expressly prohibited from using communications between the physician and patient in civil cases. *Id.*

The purpose of the patient/physician privilege is to:

create a confidential atmosphere in which the patient will be encouraged to disclose all possible information bearing on his or her illness so that the physician may render effective treatment.

*In re: June 1979 Allegheny Cty. Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73, 77 (1980). As demonstrated by this Court's language above, the privilege was designed for the protection and proper treatment of the patient, *not* the physi-

cian. The privilege is one which the patient may waive at any time, regardless of the physician's knowledge or consent thereof.[17] The patient's ability to waive any such privilege and disclose otherwise privileged communications to third parties demonstrates that appellant's reliance upon this privilege to protect his illegal activities is misplaced. The patient/physician privilege provides no basis upon which appellant could have had a reasonable expectation of privacy in the instant matter.[18]

The only basis appellant had for expecting that his communications with his patient would remain private was that his patient would keep the conversations private in order to avoid prosecution for their agreement to traffic drugs illegally. We are simply not prepared to recognize such a basis as grounds for a reasonable expectation of privacy.[19]

For the reasons set forth above, no warrant was required before the Commonwealth electronically intercepted appellant's conversations regarding his illegal activities. Accord-

17. For example, a patient may at any time request that certain records of the physician regarding the patient be transferred to another physician (i.e. for a second opinion) or another person (e.g. a lawyer), or that such matters be used at trial, thereby possibly subjecting the information to review by a jury of strangers.

18. Further, while in most instances it is not difficult to determine the specific physical location which constitutes a person's home, to identify a location which constitutes a person's workplace is a far different matter. A place where one works can be circumscribed where one is a sole proprietor such as a person working in a single office, or it could be perceived to be the entire physical limits of the Commonwealth if one were a traveling salesman or the Governor for that matter. Arguably, if one were a factory worker, he or she would argue that the "workplace" necessarily includes the entire factory and its surrounding environs, even though such factory worker by necessity interacts with hundreds or even thousands of workers in the "workplace" as in a steel production facility. By adopting appellant's invitation to extend privacy expectations at issue here to the workplace, this Court would be placing the lower courts and the authorities in the difficult position of trying to define just what facility constitutes the "workplace." However, this is a burden that this Court will not place on the judicial system or authorities.

19. We need not reach appellant's claim that there was insufficient information to support a finding that probable cause existed since, as discussed herein, a probable cause determination was not required in this matter.

ingly, the suppression court correctly denied appellant's motion to suppress the tape recorded conversations in his workplace between him and the patient/informant. The order of the Superior Court is affirmed.

NIX, former C.J., did not participate in the consideration or decision of this matter.

ZAPPALA, J., files a concurring opinion in which FLAHERTY, C.J., and NIGRO, J., join.

NEWMAN, J., files a concurring opinion.

ZAPPALA, Justice, concurring.

Because the expectation of privacy in one's office is akin to the highly protected expectation of privacy in the home, Article I, Section 8 of the Pennsylvania Constitution requires that there be a prior determination of probable cause by a neutral judicial authority before electronic surveillance is conducted in an individual's office. However, because the court order entered in this case provided the necessary constitutional protection, the intercepted communications were properly admitted.

In *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994), we held that an individual can reasonably expect that his right to privacy will not be violated in his home through the use of any electronic surveillance. We held that "[w]ith respect to oral communications occurring within one's home, interception pursuant to 18 Pa.C.S. § 5704(2)(ii) can only be deemed constitutional under Article I, Section 8 if there has been a prior determination of probable cause by a neutral, judicial authority." *Id.* at 261, 652 A.2d 287. The majority avoids the application of *Brion* by merely asserting that an office does not invoke the same heightened expectation of privacy as one's home. This conclusion is erroneous.

As noted by the majority, "[u]pon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society." *Commonwealth v. Shaw,* 476 Pa. 543, 550, 383 A.2d 496, 499 (1978).

This notion of personal liberty is so engrafted upon the jurisprudence of this Commonwealth that it is most often stated without elaboration. Constitutional protection against unreasonable searches and seizures existed in Pennsylvania more than a decade before the adoption of the federal Constitution, and fifteen years prior to the promulgation of the Fourth Amendment. *Commonwealth v. Sell,* 504 Pa. 46, 63, 470 A.2d 457 (1983). "The survival of the language now employed in Article I, Section 8 through over 200 years of profound change in other areas demonstrates that the paramount concern for privacy first adopted as part of our organic law in 1776 continues to enjoy the mandate of the people of the Commonwealth." *Id.* at 65, 470 A.2d at 467.

To hold that such expectation against government intrusion does not exist in one's office is untenable. It is unquestionable that citizens expect that agents of the Commonwealth will not intrude upon the private utterances spoken within the confines of a personal office. In both a home and an office, an individual spends significant amounts of time, retains personal documents and effects, and engages in conversations of the utmost confidential nature.[1] More importantly, in each there is an expectation that the activity occurring therein is shielded from the eyes and ears of the outside world. The fact that one does not lay his head to rest under the same roof as he conducts his business does not render his expectation of privacy in an office any less. Moreover, merely because Appellant was engaging in illegal activity does not render his

---

**1.** The discussions taking place in the medical office in the instant case are excellent examples of communications that are believed to be private. Communications between physicians and patients are statutorily protected, although such privilege was admittedly waived here by the patient/informant. The fact that such communications are of a confidential nature supports the view that a heightened expectation of privacy exists. As stated by the majority, "[t]he purpose of the physician-patient privilege is to create a confidential atmosphere in which the patient will be encouraged to disclose all possible information bearing on his or her illness so that the physician may render effective treatment." Op. at 1257–58, citing *In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73, 77 (1980). This confidential atmosphere exists in many other types of offices where business deals are made and financial transactions are conducted.

18

subjective expectation of privacy unreasonable. The Appellant in *Brion* retained his heightened expectation of privacy in his home when he sold marijuana to an informant there. Obviously, the right to engage in illegal conduct is not protected. What is to be fiercely protected, however, is the right to be free from government intrusion. That right is guaranteed by Article I, Section 8 of the Pennsylvania Constitution.

Furthermore, when discussing the expectation of privacy, our Court has repeatedly referred to one's office as falling into the same category as one's home. See *Commonwealth v. Labron*, 543 Pa. 86, 95, 669 A.2d 917, 921 (1995) ("one's expectation of privacy with respect to an automobile is significantly less than that relating to one's home or office"); See also *Commonwealth v. Holzer*, 480 Pa. 93, 103, 389 A.2d 101, 106 (1978); *Commonwealth v. Brundidge*, 533 Pa. 167, 173 n. 3, 620 A.2d 1115, 1118 n. 3 (1993) ("Fourth Amendment protection extends to a hotel room, paid for and occupied, in much the same way as it does to a citizen's home or office."); *Commonwealth v. Oglialoro*, 525 Pa. 250, 258, 579 A.2d 1288, 1292 (1990), quoting, *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment Protection."); *Commonwealth v. Johnston*, 515 Pa. 454, 459, 530 A.2d 74, 76 (1987); *Commonwealth v. Shaffer*, 447 Pa. 91, 103, 288 A.2d 727, 734 (1972) ("[w]e have long recognized a distinction between the warrantless search of an automobile and that of a home or office").

I do not suggest that a citizen's office can never be subject to electronic surveillance. Rather, I submit that in order to do so, the Commonwealth must comply with the constitutional protection against unreasonable government intrusions. The requirement of a neutral determination of probable cause to intercept communications in an individual's office is not too onerous a burden to place upon the Commonwealth, considering the protection accorded a citizen's right to privacy.

Having determined that Appellant possesses a heightened expectation of privacy in his office, the next step is to examine

whether the court order authorizing the surveillance provided the necessary constitutional protection. Here, the common pleas court, upon a finding of probable cause, authorized the use of electronic surveillance equipment to intercept and record one-party conversations occurring inside Appellant's office for a period not to exceed ten days.

We stated in *Brion* that, "[i]n light of the General Assembly's preference expressed elsewhere in the Act that probable cause determinations regarding other electronic surveillance be made by a judge of the Superior Court, 18 Pa.C.S. §§ 5708–5723, *for consistency* we believe that such procedures should be applied in fulfilling this probable cause/warrant requirement." 539 Pa. at 261–62, 652 A.2d at 289 (emphasis added). Under the circumstances of the instant case, I do not believe the fact that the authorization was made by a common pleas court judge warrants suppression of the intercepted communications. What the Constitution requires is the finding of probable cause by a neutral judicial authority; which judicial authority makes that determination is a product of case law interpreting a statutory provision. Further, by seeking authorization to electronically intercept Appellant's conversations from the common pleas court, the Commonwealth was abiding by the law applicable at the time, which required a determination from a judicial officer. *Commonwealth v. Schaeffer*, 370 Pa.Super. 179, 536 A.2d 354 (1987).[2]

In summary, I find that Appellant possesses a heightened expectation of privacy in his office which should be afforded the same constitutional protection that applies to privacy expectations in the home. However, since the order authorizing the electronic surveillance satisfied this constitutional mandate, the intercepted communications were properly admitted.

FLAHERTY, C.J., and NIGRO, J., join this Concurring Opinion.

2. The Commonwealth's application to electronically intercept Appellant's conversations was filed in common pleas court more than five years before we decided *Brion*.

NEWMAN, Justice, concurring.

I join the Majority Opinion and agree that the police properly obtained the approval of the District Attorney's designee before conducting the one-party consensual wiretap in Alexander's office.

However, I write this Concurring Opinion to discuss the requirements of the Wiretapping and Electronic Surveillance Act [1] (Act) as it applies to this case; to address the legal significance of *Commonwealth v. Schaeffer*, 370 Pa.Super. 179, 536 A.2d 354 (1987) *aff'd by an equally divided Court*, 539 Pa. 272, 652 A.2d 294 (1994); and explain why the Act sufficiently protects a person's expectation of privacy in confidences disclosed in an office such that no additional judicially created safeguards are required.

## REQUIREMENTS IN THE ACT

Generally, Section 5709 of the Act requires the police, through the Attorney General or District Attorney, to apply for an Order from a Superior Court Judge before intercepting any wire, electronic or oral communication. Once police obtain consent from one of the parties to the conversation for a consensual interception of wire, electronic or oral communications, the police do not need to obtain an order from a Superior Court judge before conducting such a surveillance. Instead, the Act only requires that they obtain the approval of the Attorney General, the District Attorney or one of their designees. Thus, I would agree with the Majority that the police in this case complied with the Act by applying to Barbieri to approve their wiretap.

## ANALYSIS OF COMMONWEALTH v. SCHAEFFER

Barbieri testified that the Commonwealth was attempting to comply with the requirements of the Superior Court's decision in *Schaeffer* when it obtained judicial approval of this wiretap. In that case, the Superior Court held that Article I, Section 8 of the Pennsylvania Constitution requires police to obtain a

---

1.  18 Pa.C.S. § 5701 *et seq.*

search warrant before conducting one-party consensual interceptions of wire, electronic or oral communications. The Superior Court held that the warrant would not have to comply with the exacting standards of the Act, except that the warrant should only issue upon a finding of probable cause supported by an affidavit. The court also acknowledged that:

> search warrants to intercept conversations are not entirely similar to search warrants to seize tangible property, and therefore some analogies to the wiretap act may be useful. For example, orders authorizing interceptions should specify some reasonable limitations as to time, place, and identity of the parties whose communications are to intercepted. *Cf.* 18 Pa.C.S. § 5712(a)–(b).

*Schaeffer*, 370 Pa.Super. at 217, 536 A.2d at 373. The Superior Court provided no further guidance to the police and the District Attorneys concerning what type of warrant was needed and how a search warrant would satisfy the provisions of the Act. On appeal, this Court, in a plurality opinion, affirmed the Superior Court. *Commonwealth v. Schaeffer*, 539 Pa. 272, 652 A.2d 294 (1994).

The *Schaeffer* opinion is problematic because it fails to provide sufficient guidance to law enforcement officials. For example, Barbieri testified here that he felt strictly applying the *Schaeffer* search warrant requirement would defeat the purpose of the one-party consensual wiretap. In particular, he noted that the service requirement of Pa.R.Crim.P.2004 would alert the unknowing party that their conversation was being recorded. In an effort to bypass this problem while still complying with the law, Barbieri interpreted the intent of the *Schaeffer* opinion to be the determination of probable cause by a neutral judicial authority. Notes of testimony, March 29, 1990, at __. (R.R. 74A). Therefore, he applied for an Order from the Court of Common Pleas authorizing the search based on Judge Abraham's determination of probable cause. However, I note that there is no provision in the Wiretap Act for judges of the Courts of Common Pleas to authorize wiretaps. Although the Commonwealth was attempting to follow the requirements of *Schaeffer*, the Superior Court's Opinion in

that case did not offer sufficient guidance to law enforcement officers concerning how to comply with the so-called warrant requirement. Moreover, as Barbieri conceded, Judge Abraham's Order did not comply with the requirements for a search warrant; for example it was not limited in time to two days and it was not served on Alexander. *Schaeffer* does not explain whether these deficiencies are fatal to the constitutionality of the search.

As this case demonstrates, the search warrant requirement makes this area of the law perplexing and impedes the effectiveness of law enforcement. It is nonfunctional and therefore unnecessary. I would explicitly overrule the *Schaeffer* search warrant requirement and uphold the wiretap in this case based solely on police compliance with Section 5704(2) of the Act, which required the police to secure an authorized District Attorney or Attorney General or their designee's approval before conducting a one-party consensual wiretap.[2]

## *WHETHER ALEXANDER HAD A REASONABLE EXPECTATION OF PRIVACY IN ORAL COMMUNICATIONS WITHIN AN OFFICE*

In addition, I feel compelled to note in greater detail why I believe that Alexander's argument that a person has a similar expectation of privacy in an office as in a home is not persuasive.[3] First, unlike an office, a person's expectation of privacy in his home has been historically protected. The drafters of the Pennsylvania Constitution emphasized the unique nature of a person's house by including it in the language of Article I, Section 8. This Court has since vigorously protected a person's expectation of privacy in their home; "[up]on closing the door of one's home to the outside

2. *Brion* may have implicitly overruled the *Schaeffer* search warrant requirement by requiring a Superior Court judge to make probable cause determinations for interceptions of oral communications in a home. However, I would have explicitly overruled the search warrant language.

3. I note that Alexander used his office to sell prescriptions for drugs later sold on the street. He is now making this unconvincing comparison of an office to a home to shield his abandonment of his professional oath and his abuse of the physician's privilege to prescribe medications.

world, a person may legitimately expect the highest degree of privacy known to our society." *Commonwealth v. Shaw,* 476 Pa. 543, 550, 383 A.2d 496, 499 (1978). The home is a sacrosanct location in our society.[4] We have never extended such heightened protection under Article I, Section 8 to unprivileged communications in an office, and I would decline to do so here.

Moreover, the Act protects any privacy interest that a person may have to a conversation in an office by requiring the police to obtain written authorization from a District Attorney or Attorney General or their designee before conducting a one-party consensual wiretap. I would find that, with these provisions, the Act sufficiently protects a person's limited privacy interests in an office.

Finally, we should be cautious before adding to the judicially created requirements of the Act. I agree with Justice White of the United States Supreme Court who opined:

> [We should not] be too ready to erect constitutional barriers to relevant and probative evidence which is also accurate and reliable. An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent. It may also be that with the recording in existence it is less likely that the informant will change his mind, less chance that threat of injury will suppress unfavorable evidence and less chance that cross-examination will confound the testimony.

*U.S. v. White,* 401 U.S. 745, 753, 91 S.Ct. 1122, 1126–27, 28 L.Ed.2d 453 (1971).[5] Thus, I would hold that no additional judicial review of an application to intercept an oral, wire or

4. I have, however, repeatedly stated that the use of a residence for illegal activity, such as the sale of drugs, should deprive even the occupants of a home of their traditional expectation of privacy. *Commonwealth v. Selby,* 547 Pa. 31, 688 A.2d 698 (1996) (Newman, J., dissenting).

5. In *White,* the Supreme Court of the United States held that a warrantless wiretap conducted with the consent of one party to the recorded conversation did not violate the Fourth Amendment. While I recognize that we are deciding this case pursuant to Article I, Section 8 of the Pennsylvania Constitution, not the Fourth Amendment of the United States Constitution, I find the reasoning in *White* persuasive.

24

electronic communication in an office pursuant to Section 5704(2) is necessary under Article I, Section 8.