STEINBERG, J.,
The defendant, John Large, is alleged to have covertly recorded a discussion that he initiated with the Administrative Director of Nursing Services at HCR Manor Care, which is located at 2029 Westgate Drive, Bethlehem, Lehigh County. The discussion, which was described as somewhat confrontational, took place in the administrative director’s office, and concerned his complaints about his adult daughter’s care at the facility.
*451 It is the Commonwealth’s position that the recording of that discussion, which they believe was accomplished with “glasses capable of audio and visual recording,”[1] violates the “Wiretapping and Electronic Surveillance Control Act.”[2] As a result, the defendant has been charged with “Interception, disclosure or use of wire, electronic or oral communications.”[3] Each of the four (4) counts in the Information identify four (4) employees of Manor Care, who were present at some point during the discussions with the defendant. The defendant is also charged with “Possession, sale, distribution, manufacture or advertisement of electronic, mechanical or other devices and telecommunication identification interception devices;”[4] namely, the “eyeglasses that recorded audio and video.”[5]
“Omnibus Pretrial Motions” were filed on behalf of the defendant which include a “petition for writ of habeas corpus.” It is alleged in that petition that “the Commonwealth cannot sustain any of the charges lodged against the petitioner because none of the victims possessed a reasonable expectation of privacy with regard to the substance of any conversation allegedly recorded by petitioner.”[6] A hearing was held on March 10, 2014, during which Patricia Zurick, the administrative director of Nursing Services, and Detective Sergeant Christopher Vasvari of the Bethlehem Police Department testified. The Commonwealth also submitted the transcript from the *452 preliminary hearing for consideration in evaluating the sufficiency of the evidence.[7] Both counsel subsequently submitted written documents supporting their respective positions.
Background
On June 11, 2014, the defendant walked into Ms. Zurick’s office, unannounced, with complaints about his daughter’s care at Manor Care. He wanted his daughter transferred to a different facility. During their conversation, which lasted not more than sixty (60) minutes, the door to the office was open. The office itself is “accessible from a common hallway” and is approximately twenty-five (25) feet from the elevators. Anyone within earshot of the office could overhear the discussion between the two of them.
Ms. Zurick testified that the door remained opened because she was fearful of the defendant. She thought that by keeping the door open, other people could overhear their discussion and presumably intervene, if necessary. In fact, both Ms. Zurick and the defendant became confrontational, but the discussion ended “amicably.”
Throughout their discussion, other staff personnel were either already present or entered the office. For example, Ms. Zurick shared her office with Vivian Villanueva, who held a “staffing” position at Manor Care. Her desk was directly across from Ms. Zurick. Ms. Villanueva testified at the preliminary hearing that she was present in the office when the defendant arrived, but did not remember if she remained in the office until he departed.[8] Susan Fisher, the Nursing Home Administrator, entered Ms. Zurick’s office *453 from her own office because she overheard the discussion “getting out of hand and loud.”[9] She described Ms. Zurick’s office as “open, anybody can come in but it is not an open office, you have to walk in.”[10] At some point during the defendant’s presence in the office, Leeza Ohl, the Director of Rehabilitation, was also invited to join them. None of the Manor Care employees were aware or consented to the defendant clandestinely recording the discussions.
The entire episode came to light when the defendant forwarded three (3) DVDs to the FBI, Scranton Field Office. One of the DVDs contained the recorded conversation with Ms. Zurick and her fellow workers. The device the defendant used for recording was similar to glasses previously used by the defendant, which were described as “glasses... designed with an SD card implanted in the frame of the glasses with the capability to audio and video record through them.”[11]
Discussion
The unlawfulness of the defendant’s recording of his conversations with the Manor Care employees is dependent upon whether the audio interception is an “oral communication” as defined by the “Wiretapping and Electronic Surveillance Control Act” (hereinafter Act). If it is an “oral communication,” then at this stage of the proceedings the prima facie threshold for violating 18 Pa.C.S. § 5730(1) would be satisfied.[12] In Commonwealth *454 v. Fountain, 811 A.2d 24, 25-26 (Pa. Super. 2006), the prima facie standard was explained as follows:
The Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury. When deciding whether a prima facie case was established, the evidence [must be viewed] in the light most favorable to the Commonwealth, and all reasonable inferences based on that evidence which could support a guilty verdict [must be considered].
Commonwealth v. Barnes, 14 A.3d 328, 130 (Pa. Super. 2011) quoting Commonwealth v. James, 863 A.2d 1179, 1182 (Pa. Super. 2004)(enbanc). See also Commonwealth v. McCullough, 86 A.3d 896, 898-899 (Pa. Super. 2014); Commonwealth v. Williams, 911 A.2d 548, 550-551 (Pa. Super. 2006).
18 Pa.C.S. § 5702 defines an “oral communication” as:
Any oral communication uttered by a person possessing an expectation of privacy that such communication is not subject to interception under circumstances justifying such expectation.
It is apparent that the definition of “oral communication” does not prohibit the interception of all communications. Instead, a communication is only a prohibited oral communication when it is uttered by a person exhibiting an expectation of privacy under circumstances justifying such an expectation. See Agnew v. Depler, 717 A.2d 519, 522-523 (Pa. 1988)(Police officer’s conversations *455 with other officers did not meet the definition of “oral communication” as officer did not possess a reasonable expectation of privacy, because squad room door was open, and all conversations could be heard in police chiefs office...). Under both state and federal law, the expectation of privacy requires more than a subjective expectation of privacy, but rather the expectation must be one that society is prepared to recognize as reasonable and legitimate. Agnew, 717 A.2d at 523; Commonwealth v. Duncan, 817 A.2d 455, 463 (Pa. 2003); Commonwealth v. Rekasie, 779 A.2d 624, 629 (Pa. 2001); Commonwealth v. Perel, 107 A.3d 185, 188-189 (Pa. Super. 2014); Office Of the Lieutenant Governor v. Mohn, 67 A.3d 123, 130 (Pa. Cmwlth. 2013); Kelly v. Borough of Carlisle, 622 F.3d 248, 257(3rd Cir. 2010); State v. Duchow, 749 NW.2d 913 (2008).[13] The Superior Court has explained:
To satisfy the first requirement, the individual must demonstrate that he sought to preserve something as private. To satisfy the second, the individual’s expectation of privacy must be justifiable under the circumstances... In determining whether a person’s expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved.
Commonwealth v. Prisk, 13 A.3d 526, 531 (Pa. Super. 2011).
*456 A variety of factors have been deemed relevant in reaching that conclusion, including the “volume of the conversation; the proximity or potential proximity of others within earshot; what precautions, if any, the conversants have taken to avoid being overheard; whether society accepts those precautions as acceptable or worthy of legal recognition; the location where the conversation takes place; the capabilities of device used to record the conversation; and the nature of conduct that was intercepted.” Clifford S. Fishman and Anne T. McKenna, Wiretapping and Eavesdropping: Surveillance in the Internet Age §2.42 (3rd Ed. 2007) (hereinafter Fishman and McKenna, Wiretapping and Eavesdropping). In State v. Duchow, 749 NW.2d at 920-921 these same factors were considered in holding that the defendant’s threatening, tape-recorded statements to student on bus were not oral communications. See also Hornberger v. American Broadcasting Companies Inc., 799 A.2d 566, 623-624 (N.J. A.D. 2002) quoting Kee v. City of Rowlett, 247 F.3d at 213-215.[14]
The appellate courts of Pennsylvania have been less specific in assessing whether the expectation of privacy was legitimate and reasonable. Commonwealth v. Henlen, 564 A.2d 905 (Pa. 1989)(“Henlen II”)(Suspect’s surreptitious recording of interview conducted by investigating officer at local prison in presence of another prison guard was not an “oral communication” in that officer had no reasonable expectation of privacy); Commonwealth v. Louden, 638 *457 A.2d 953 (Pa. 1994)(Child day care providers had no justifiable expectation of privacy once conversations, threats, arguments, and screams became audible in adjoining home, and adjoining homeowners recording of those did not constitute “oral communication” in violation of the Act); Commonwealth v. Christopher, 620 A.2d 494 (Pa. Super. 1992) appeal denied 639 A.2d 23 (1994)(The recording of conversation between social worker and client at social worker’s office which he shared with another CYS caseworker did not constitute an oral communication because caseworker did not have a justifiable expectation of privacy); Commonwealth v. Prisk, 13 A.3d at 528-532 (The recording of conversation by victim with the defendant in visitation room at prison did not constitute an “oral communication” because defendant did not have a reasonable expectation of privacy nor was it an expectation of privacy society is prepared to recognize).[15]
In Commonwealth v. Alexander, 708 A.2d 1251 (Pa. 1998), in which communications between patient and physician were intercepted at a workplace and not in a home, it was held that the expectations of privacy differ between the two locations.
A workplace, by its very nature, generally requires the proprietor’s interaction with other persons in order to conduct business. While the proprietor’s nature of contact with such other parties can vary in form, a workplace normally requires certain interaction with *458 strangers or third parties over whom the proprietor has little control or about whom the proprietor knows very little beyond the nature of the business relationship...
⅜⅜⅜
[t]here may be some circumstances where this court may be willing to recognize heightened levels of expectations of privacy in the workplace, for example where the communication sought to be intercepted is strictly internal (such as communications which may arise between an employee and employer) or where the communication regards something which may otherwise be protected by common law or by statue.
Id. at 1257.
Here, as in Alexander, the defendant was under no obligation to keep his conversations with the employees of Manor Care confidential. Nothing was said by those employees to the defendant that he “should not know.” See Christopher, 620 A.2d at 496. Therefore, they had no reasonable expectation of privacy that the defendant would keep his conversations with them private.
It is undeniable that the employees at Manor Care were surprised that their conversations were recorded. However, the evaluation of the Commonwealth’s evidence is less about the employees’ subjective expectation of privacy and more about whether they had an obj ectively reasonable expectation of privacy that their conversations in an open office would not be recorded. Cressman v. Ellis, 77 Fed. Appx. 744 (2003) citing O’Connor v. Ortega, 480 U.S. 709, 718 (1987)([T]he determination of an objectively reasonable expectation of privacy is a question of law for the court, [and] it is also a highly intensive inquiry).
The totality of the circumstances, utilizing the *459 aforementioned relevant factors, does not support the conclusion that the recorded conversations fall within the definition of “oral communication.” All of the conversations were recorded at Manor Care in Ms. Zurick’s office, which she shared with Ms. Villanueva. These conversations were held in earshot of Ms. Villanueva and the door to the office was open. Others participated in the confrontational conversations and the tone of the conversation would not lead anyone to believe that it was intended to remain private. No precautions were taken to avoid being overheard and Ms. Zurick kept the door open so others could hear in case there was a need for someone to intervene. The capabilities of the device itself are unknown, but it does not appear that other than the conversations in Ms. Zurick’s office any other conversations were recorded.[16] Finally, the nature of the conversation intercepted pertained to the defendant’s daughter and not to any private matters relating to the Manor Care employees, and so these communications were subject to a diminished expectation of privacy.
More than twenty-five (25) years ago, Judge Beck, in Commonwealth v. Kean, recognized that the development of “sophisticated instruments have accelerated the ability of government to intrude into areas which a person normally chooses to exclude from prying eyes and inquisitive minds.” Commonwealth v. Kean, 556 A.2d 374, 384 (Pa. Super. 1989) quoting Burrows v. Superior Court of Bernardino, 529 P.2d 590, 596 (1974). She offered the admonition that “judicial interpretations of the reach of constitutional protection of individual privacy must keep pace with the perils created by these new *460 devices.” Id. Her cautionary tale may have been aimed at the government, but as technology continues to erode personal privacy, it is not only the government that has access to “sophisticated instruments,” but also private individuals. This case demonstrates what others have said, that as “[o]ur technological powers increase, [ ] the side effects and potential hazards also escalate.”[17] The current privacy and wiretap laws may not have anticipated that technology like spy glasses or Google Glass, which has the ability to record audio or video, would become mainstream technology.
All of these privacy concerns related to the defendant’s actions are valid. Even so, the totality of the circumstances presented in this case does not support the conclusion that the defendant violated the Act by recording his conversations with the employees of Manor Care.
The defendant is also charged under 18 Pa.C.S. § 5705(1), which in pertinent part states:
Except as otherwise specifically provided in section 5706... a person is guilty of a felony of the third degree if he does any of the following:
(1) Intentionally possesses an electronic, mechanical or other device knowing or having reason to know that the design of such devise renders it primarily useful for the purpose of the surreptitious interception of a wire, electronic or oral communication (emphasis added).
This section, which in all relevant parts mirrors 18 U.S.C.A. § 2512, prohibits devices when “the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, electronic, or oral *461 communication.” Such devices are sometimes referred to as “ESIDs” for “electronic and surreptitious surveillance devices.” Fishman and McKenna Wiretapping and Eavesdropping § 2.103. This provision has most often been applied to satellite-television piracy. 129 A.L.R.Fed 549, § 2[a]. See U.S. v. Harrell, 983 F.2d 36 (5th Cir. 1993); See U.S. v. Davis, 978 F.2d 415 (8th Cir. 1992); See U.S v. Lande, 968 F.2d907, 910 (9th Cir. 1992): See U.S. v. Spiawn, 982 F.2d 414 (10th Cir. 1992). Most of these cases conclude that it is “difficult to imagine any purpose for these [ ] descramblers other than the unauthorized interception of satellite television signals.” Accord.
The legislative history and relevant case law, which is not related to descramblers, points out the following: The statute was intended to focus on a relatively narrow category of devices and apparatus whose design renders them useful primarily for surreptitious listening. See S.Rep. No. 1097, 90th Cong., 2d Sess. 94-95, reprinted in 1968 U.S. Code Cong. & Ad. News 2112, 2183 [“Senate Report”]. The statute was not intended to prohibit the use of a device merely because it may be adapted to wiretapping or eavesdropping; by the same token, however, a device does not fall outside the ambit of the statute merely because it may have innocent uses. The inquiry is to be directed toward whether the device is designed in such a way that its “principal use is likely to be for wiretapping or eavesdropping.” Id. (emphasis added). See United States v. Pritchard, 745 F.2d 1112, 1114, 1122-23 (7th Cir. 1984) (Pritchard 7); see also United States v. Pritchard, 773 F.2d 873, 878-79 (7th Dir. 1985) (Pritchard II): see also United States v. Bast, 495 F.2d 138, 143 (D.C. Cir. 1974). In determining whether the primary use of a device is for wiretapping or eavesdropping, “the sort of judgment called for... in close cases ... warrants] the use of expert *462 testimony.” Senate Report at 95, U.S. Code Cong. & Admin. News 1968, p. 2183. See United States v. Wynn, 633 F.Supp. 595, 602 (U.S.D.C. III. 1986); see also United States v. Hochman, 809 F.Supp. 202, 205 (E.D.N.Y. 1992) (The legislative histoiy and the decisions of several courts confirm that the principal concern of Congress was to prevent the use of “spike mikes, disguised microphones, and wiretaps for the purpose of invading the privacy of business and personal communication”).
Here, the device used by the defendant was not seized. However, detective Nothstein of the Carbon County District Attorney’s Office, described an incident in 2011 in which he seized glasses the defendant used to record a courtroom proceeding. It is unknown if the glasses from this incident in 2014 had all of the same features, and no expert testimony was presented regarding the glasses in this case.
Based on the evidence presented, it cannot be determined whether the glasses worn by the defendant were “primarily useful for the surreptitious interception of oral communication” or whether the recording of conversations was just another feature of the device. In that regard, Google Glass, which is a wearable computer with an optical head mounted display, has many features, including a touchpad which permits the display of search engine results, and the ability to download and run a variety of applications. The Commonwealth’s evidence in this case, based on the legislative history, caselaw, and evidence presented, fails to meet its burden to demonstrate that, whatever the capabilities of the defendant’s device, “its design renders it primarily useful for the purpose of the surreptitious interception of... oral communication.”
*463 For all the foregoing reasons, this court is constrained to provide the defendant the relief requested in his “petition for writ of habeas corpus.”
ORDER
And now, this 20th day of April, 2015, upon consideration of the “petition for writ of habeas corpus” filed by defense counsel on January 16, 2015, the habeas corpus hearing held on March 10,2015, and consideration ofthe submissions of law by counsel for the Commonwealth and defendant;
It is hereby ordered that the “petition for writ of habeas corpus” is granted.

. The defense, in its “brief in support of petition for writ of habeas corpus filed by defendant, John Large” refers to the item as a “digital device,” but the device itself was not introduced into evidence nor was it specifically identified.

. 18 Pa.C.S. §5701 et. seq.

. 18 Pa.C.S. §5703(1).

. 18 Pa.C.S. §5705(3).

. Commonwealth Information, ¶ 4.

. Petition for writ of habeas corpus, ¶ 6.

. See Commonwealth Exhibit 1.

. Notes of Testimony Preliminary Hearing (hereinafter N.T.P.H.), pp. 20-21.

. Id at 17.

. Id. at 16-18.

. Id atp. 27.

. § 5703. Interception, disclosure or use of wire, electronic or oral communications.
Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:
(1) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic *454 or oral communication.

. Congress intended the definition of “oral communication” to parallel the “reasonable expectation of privacy test” articulated in Katz v. United States, 389 U.S. 347, 360 (1986); see Kee v. City of Rowlett, 247 F.3d 206, 211 n.8 (5th Cir. 2001) cert. denied 122 S.Ct. 210; United States v. Larios, 593 F.3d 82, 92 (1st Cir. 2010); Deegan v. Rudman, 2011 WL 251226* 6 n.12 2011 WL 251226 (WD.Va.). Additionally, “oral communication” under the Act and Title III of the Omnibus Crime Control and Safe Streets Act of 1968 are “virtually identical.” Commonwealth v. Deck, 954 A.2d 603, 608 (Pa. Super. 2008).

. Other courts have also used these factors in their analysis. See Reynolds v. City and County of San Francisco, 2012 WL 1143830 *5 (N.D. Ca. 2012)(collecting cases); See also Abido v. State, 144 So.3d 594, 596 (D. FI. 2014); See also Aldrich v. Ruano, 952 F.Supp.2d 295, 302 (D. Ma. 2013); See also Perraglio v. New Mexico, 2009 WL 2392027 * 4 (D. NM 2009); See also Stinebaugh v. County of Walla Walla, 2008 WL 4809886 (E.D. Wa. 2008).

. The Superior Court in Commonwealth v. Mclvor, 670 A.2d 697 (Pa. Super. 1996) held that communications recorded by police officer of unsuspecting motorists constituted “oral communications” because, although motorists had no expectation of privacy to statements, they had “real expectation of noninterception.” However, any reliance on Mclvor is subject to the language of the Supreme Court in Agnew v. Dupler, supra, which held that “it is not possible to have an expectation of non-interception absent an expectation of privacy.” Id. at 523.

. More sensitive or powerful equipment would support the argument that the conversation was an “oral communication.” See Fishman and McKenna, Wiretapping and Eavesdropping, § 2.42 n.7.

. Alvin Toffier, Future Shock 429 (1970).